582 A.2d 1074

**Risa M. EDELSTEIN**

**v.**

**Norman L. EDELSTEIN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1990.

Filed Oct. 26, 1990.

Reargument Denied Jan. 4, 1991.

Stewart B. Barmen, Pittsburgh, for appellant.

Sanford A. Middleman, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

This is an appeal from an Order entered December 28, 1989, directing appellant/husband to pay $4,000 per month alimony. The case has a somewhat complex procedural history beginning with the parties' divorce decree entered September 20, 1984, wherein the court retained jurisdiction over the issues of equitable distribution, alimony, child support and counsel fees.

On December 18, 1986, the court entered a decree nisi distributing the marital estate and ordering the appellant to pay alimony and child support of $4,000 per month. Exceptions were filed and a final Order was entered July 6, 1987, wherein the court, *inter alia*, increased the unallocated alimony and support payment to $4,300 per month.[1] Upon consideration of consolidated appeals (filed by husband and wife), this Court affirmed the distribution of the marital assets but vacated the award of alimony and support (*Edelstein v. Edelstein*, 381 Pa.Super. 662, 548 A.2d 644 (1988) (unpublished memorandum).

> On remand, the amount and duration of any subsequent award of alimony must be supported by an inquiry into wife's earning capacity and the parties' appropriate standards of living. We further direct the court to distinguish the amount of child support it may award from any subsequent award of alimony. The court's equitable distribution of the marital assets is affirmed.

*Id.* A hearing in accordance with the remand Order was held and an Order was entered October 2, 1989 finding appellee entitled to alimony of $4,000 per month for ten years, the Order being modifiable upon change of circumstances of either party. Post-trial motions for relief were filed and a modified Order was entered, awarding appellee $4,000 per month alimony from July, 1988 through December 1999, and scheduling a hearing to determine child support.[2] The Order did not specifically consider the consequences of any change of circumstances affecting the parties.

Appellant argues the trial court, on remand from this Court, abused its discretion by awarding appellee $4,000 per month alimony in that the court failed to consider the parties' modest standard of living during the marriage as it was directed to do by this Court. Additionally, appellant

1. Wife received 80 per cent ($414,031) of the marital estate.

2. Appellant was directed by Order dated February 6, 1990 to pay $1,500 per month child support for the parties' only child who will reach age 18 in 1991. This Order was consented to by appellant and is not subject of this appeal.

urges the trial court abused its discretion in that the alimony award is contrary to the weight of evidence and contrary to law. He argues the alimony award should be considered in conjunction with "(1) the generous child support award of One Thousand Five Hundred Dollars ($1,500.00) per month, to which Husband consented, (2) Wife's earning capacity, (3) Husband's continuous diminishing earning capacity and (4) an event such as Husband's death, disability or retirement." Appellant's brief at p. 10.

The standard of review for questions concerning alimony is limited to a determination of whether the trial court abused its discretion. *O'Callaghan v. O'Callaghan,* 389 Pa.Super. 319, 567 A.2d 308 (1989); *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983). Under such a standard, albeit we are not to usurp the trial court's duty as the finder of fact, our obligation to review the proceedings thoroughly under the Divorce Code is no less extant. *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983). In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage. *See* 23 P.S. § 501 Alimony.

The parties were married and lived together for 16 years during which time the appellant's income grew from $14,000 per year as a medical student to approximately $90,000 per month as an ophthalmologist, specializing in cataract surgery. We agree with this Court's prior determination that the appellant's allegation he is laboring under a diminishing earning capacity is specious given his undisputed specialized training and reasonable earnings and earning

capacity.[3] (*Edelstein, supra.*) The appellee's earning capacity, on the other hand, is essentially nonexistent as she suffers from debilitating Crohn's disease. Expert medical testimony by Dr. Robert Chamovitz, a Board certified internist and gastroenterologist, confirmed that in addition to recurrent obstruction, fistulation and abscess of the intestines, the 44 year old appellee suffers from systemic problems in the joints, eyes, kidneys and skin. Treatment of the appellee's disease has included a variety of dulling medications such as Lomotil and Percocet, as well as three surgical interventions which have left the appellee with less than half of her colon. Additionally, wife requires treatment for anemia, recurrent kidney stones and joint maladies. Dr. Chamovitz stated the appellee will continue to suffer from on-going, active Crohn's disease for the rest of her life and, as such, is unable to sustain gainful employment (Deposition, 11/22/88, pp. 9–22). Appellee testified problems such as frequent bowel activity, lack of energy, arthritis and hand cramping and pain and/or medication prevent her from pursuing any free-lance illustrating jobs such as those she assumed prior to the birth of the parties' child in 1973, when appellee assumed the sole role of homemaker and mother.

Appellant contends the wife has earning capacity, despite the testimony of her doctor, exhibited by her extensive full-time commitment as president of the Pittsburgh Chapter of a national research fund-raising organization. Husband's expert, after receiving her medical records and current lifestyle, indicated wife is to some extent capable of working. This is a factual issue and must be weighed by the trial court, and viewing the record in its totality, we are unable to say there was a gross abuse of discretion.

Appellee also testified as to the parties' lifestyle during their marriage which included a more than comforta-

3. For example, appellant testified that in 1982 he charged $2,000 for an operation that took 20 minutes to perform, and he was able to perform six such operations between 8:00 a.m. and noon (H.T., 5/24/89, p. 185).

ble home and various amenities including, *inter alia,* intercom and alarm systems, heated sidewalks and driveway and hired help. The appellant's income allowed the parties the luxury of purchasing at will, with cash, clothing and household items as well as nonessentials. Appellant's contention wife should be restricted to a lifestyle which reflects that which existed at the time of marriage is not one we can accept on the facts of this case. While the restricted lifestyle might have been tolerable, it was below that which was reasonably possible with appellant's income and position, not out of necessity, but as a matter of choice. The cases which support the position that the standard of living after separation, if possible, should reflect the conditions existing before separation, turn on the available income and lifestyle that income would support. To live during the marriage in a fashion dedicated to reducing expenditures and accumulating wealth, thereby living far below the standard one would expect of persons in that position, cannot be a basis for depressing the living standard of the wife, while permitting the husband to continue to amass large financial assets after separation. The standard of living to which she is entitled is one reasonably supportable by the income and station in life of the parties, irrespective of the frugal inclinations of the husband.

■ As to the trial court's alleged failure to consider "(4) an event such as Husband's death, disability or retirement" (appellant's brief at p. 10), the following statutes apply and, therefore, it is not necessary for a trial court to specifically consider each of the possibilities in its Order:

**23 P.S. § 508. Effect of death of either party**

Upon the death of the payee party, the right to receive alimony pursuant to this chapter shall cease. Upon the death of the payor party, the obligation to pay alimony shall cease unless otherwise indicated in an agreement between the parties or an order of court.

**23 P.S. § 501. Alimony**

(e) Any order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon such order may be modified, suspended, terminated, reinstituted, or a new order made. Any such further order shall apply only to payment accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

See *McFadden v. McFadden,* 386 Pa.Super. 506, 511–12, 563 A.2d 180, 183 (1989) ("Pennsylvania case law clearly establishes that retirement can serve as a basis for the changed circumstances of a substantial and continuing nature necessary to modify an alimony award."); *Teribery v. Teribery,* 357 Pa.Super. 384, 393, 516 A.2d 33, 37–38 (1986) (an alimony award need not reflect all contingencies— "Should either party die or become disabled, for example, a petition for modification can be filed to reflect changed circumstances."); and *Chaney v. Chaney,* 343 Pa.Super. 77, 493 A.2d 1382 (1985) (the 1980 Code, we find that the Code does not authorize the award of alimony to extend past the payor's death, unless the parties have voluntarily agreed otherwise).

Finally, we believe appellant's contention that the court should have considered the generous child support in conjunction with the alimony Order is unfounded. Our thorough review of the record supports the conclusion this matter was considered. At the time of remand, the alimony/child support Order was $4,300. The child support was thereafter entered in the amount of $1,500, which is uncontested. Subsequently, the alimony Order was entered in the amount of $4,000. The nature of the alimony and support Orders was substantially changed evidencing different realities and circumstances. The alimony Order became time-limited and subject to changed circumstances, whereas prior to the original remand, it bound the husband until the death of either party or remarriage of the wife or activation of retirement benefits for the wife. Since it was

an unallocated Order for wife and child, it could be argued that it would not be subject to substantial reduction, even after the child reached majority. The present Order reflects the fact that the child, within one year, will reach majority, and it appears her college expenses are provided for in the manner of a trust fund. Child support will not thereafter be a component of wife's income. The wife's alimony, instead of being for life, will end as of December 1, 1999. By separating alimony and child support and reducing lifetime alimony to about eleven years, the court has adequately considered the interrelationship of the child support Order and alimony. The husband has a clearly ascertainable fixed period and amount of financial obligation whereas before it was unlimited in its duration. It cannot, therefore, be said the court failed to consider in conjunction, the support and alimony and their effect on each other. Taking into consideration that the husband has a large income and earning potential, and that the wife, in sharing in pension proceeds and with proper management of the fund received in equitable distribution, can be expected to be free of financial concerns after the alimony has ended, a comprehensive and complete resolution of the marital rights appears to have been attained.

Spousal support assures a reasonable living allowance to the party requiring support. *Laughlin v. Laughlin*, 372 Pa.Super. 24, 538 A.2d 927 (1988). The Order of support must be fair and not confiscatory and must allow for the reasonable living expenses of the payor. *Costello v. LeNoir*, 462 Pa. 36, 337 A.2d 866 (1975); *Commonwealth v. Vogelsong*, 311 Pa.Super. 507, 457 A.2d 1297 (1983). Proper exercise of discretion requires the court to apply the Divorce Code in a compassionate and reasonable manner so that the overriding goal of effectuating justice between the parties may be achieved. *O'Callaghan, supra.* A careful review of the record reveals the trial court did not abuse its discretion, and that its award of $4,000 per month

alimony to the appellee was appropriate under the circumstances.

Order affirmed.