T.C. Memo. 2003-92

UNITED STATES TAX COURT

JANE GILBERT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RICHARD C. HAWLEY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 1592-01, 4178-01.     Filed March 28, 2003.


John W. Schmehl, for petitioner in docket No. 1592-01.

Charles F. Blumenstock, Jr., for petitioner in docket No.
4178-01.

Jack T. Anagnostis, for respondent.


MEMORANDUM OPINION

WELLS, Chief Judge: Respondent determined deficiencies in
the Federal income tax of petitioner Jane Gilbert, formerly Jane

Hawley (Ms. Gilbert), for the taxable years 1993, 1994, and 1995 of $7,163, $8,922, and $6,157, respectively. Respondent determined deficiencies in the Federal income tax of petitioner Richard C. Hawley, M.D. (Mr. Hawley), for the taxable years 1993, 1994, and 1995 of $21,644, $23,261, and $19,355, respectively.[1]

After concessions, the issue remaining to be decided in the instant cases is whether any part of the unallocated child and spousal support payments constitutes alimony under section 71[2] that is deductible by the payor spouse, Mr. Hawley, under section 215, and includable in the gross income of the payee spouse, Ms. Gilbert, under sections 61(a)(8) and 71(a). In the notices of deficiency and on brief, respondent has taken inconsistent positions, in that respondent disallowed deductions to Mr. Hawley and required Ms. Gilbert to report alimony income. Respondent asks us to allocate the subject payments consistently between petitioners. Moreover, if we find that the payments constitute alimony, then we must decide whether Ms. Gilbert is liable under section 55 for alternative minimum tax because of the increase in her gross income from the alimony adjustment.

---

[1]These cases have been consolidated for purposes of briefing and opinion because they involve common questions of law and fact arising from the separation and divorce of petitioners.

[2]All section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties submitted the instant case fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of facts are hereby incorporated by this reference and are found as facts in the instant case.[3]

Petitioners were residents of Pennsylvania when they petitioned this Court. On April 25, 1977, petitioners were married in Buchanan, Georgia. Three children were born of petitioners' marriage: Charles R. Hawley (born September 7, 1978), Katherine G. Hawley (born July 9, 1980), and Margaret G. Hawley (born August 25, 1983).

On September 22, 1990, petitioners separated and thereafter were not members of the same household. On October 23, 1990, Ms. Gilbert sued Mr. Hawley for divorce. On October 25, 1990, Mr. Hawley answered and counterclaimed against Ms. Gilbert for divorce. At the time petitioners initiated the divorce proceedings, they were residents of Schuylkill County, Pennsylvania.

On February 4, 1992, the Court of Common Pleas of Schuylkill County entered an agreement and order of support (hereinafter the February 4, 1992, separation instrument), which stated:

---

[3]Respondent objects on grounds of relevance to stipulations 12, 13, and 23. Both Ms. Gilbert and respondent object on grounds of relevance to stipulation 25. This Court finds these objections to be moot because this Court does not rely upon those stipulations in reaching our decision.

AND NOW, this 4th day of February, 1992, upon agreement of the parties, it is hereby ORDERED that the Defendant is directed to pay the sum of $2,077.00 bi-weekly for and toward the support of wife and three (3) minor children. In addition, the Defendant is directed to pay the sum of $100.00 bi-weekly on account of accumulated arrearages, for a total sum of $2,177.00 bi-weekly. The first payment in the sum of $2,177.00 is to be made February 5, 1992 and a like sum each second Wednesday thereafter.

As of February 5, 1992 the arrearage balance shall be $2,224.00

This Order is to be effective February 5, 1992.

All payments are to be made to the Domestic Relations Section of this Court and mailed to P.O. Box 1192, Pottsville, PA 17901. The number 18758 must appear on all payments and correspondence mailed to this office.

The parties are directed to make available to all dependents named in this Order any employer-provided medical or other benefits available at no cost as a benefit of employment or at a reasonable cost. The parties are directed to notify the Domestic Relations Section in writing within seven (7) days of obtaining coverage or any change in coverage.

Both parties shall inform the Domestic Relations Section in writing of any change in employment, change of address or change of address of a child receiving support within seven (7) days of such change.

An automatic wage attachment shall be issued without notice on Defendant upon default of an amount equal to one month's support obligation or at such other time as the Court may designate.

Plaintiff will be responsible to pay the first $1,000.00 per year for uninsured medical expenses including dental, orthodontic, optical and prescription drugs. Any uninsured medical expenses in excess of $1,000.00 per year shall be divided between the parties: Plaintiff 35% and Defendant 65%.

Commencing with the payment due March 1, 1992 Plaintiff shall be obligated to make the monthly mortgage payments on the residence located at 365 Pershing Drive, Orwigsburg, Schuylkill County, Pennsylvania.

Mr. Hawley deducted $54,100 in 1993, $54,100 in 1994, and $51,565 in 1995 as alimony paid to Ms. Gilbert.

Ms. Gilbert did not report the receipt of any payments from Mr. Hawley for 1993, 1994, and 1995.[4]

On July 18, 1995, petitioners divorced. On November 20, 1995, pursuant to a petition to the Court of Common Pleas of Schuylkill County, that court terminated Mr. Hawley's obligation to provide spousal support for Ms. Gilbert and transferred the matter to the Domestic Relations Office for "a determination of the appropriate amount of child support."[5]

---

[4]Ms. Gilbert filed tax returns for 1993 and 1995 but not for 1994. Ms. Gilbert qualified for head-of-household filing status for 1993, 1994, and 1995.

[5]The order granting Mr. Hawley's petition to terminate spousal support stated:

AND NOW, this 20th day of November, 1995, at 9:00 a.m., the Court hereby ORDERS the following:

1. The defendant's Petition To Terminate Spousal Support is GRANTED as the obligation for spousal support is terminated as a matter of law by the entry of the July 18, 1995 Decree in Divorce; and

2. This matter is TRANSFERRED to the Domestic Relations Office for a determination of the appropriate amount of child support.

## Discussion

We must decide whether all or any part of the predivorce unallocated support payments made by Mr. Hawley to Ms. Gilbert qualify as alimony to the payee spouse, Ms. Gilbert, includable in gross income under sections 61(a)(8)[6] and 71(a)[7] and deductible by the payor spouse, Mr. Hawley, under section 215.[8]

To be considered alimony unallocated support payments must conform to the requirements of section 71(b). Lovejoy v. Commissioner, 293 F.3d 1208 (10th Cir. 2002), affg. Miller v. Commissioner, T.C. Memo. 1999-273; Zinsmeister v. Commissioner, T.C. Memo. 2000-364; Gonzales v. Commissioner, T.C. Memo. 1999-332. Section 71(b) provides in part:

> SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if–

---

[6]    SEC. 61(a). General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

*    *    *    *    *    *    *

(8) Alimony and separate maintenance payments; * * *

[7]    SEC. 71(a). General Rule.--Gross income includes amounts received as alimony or separate maintenance payments.

[8]    SEC. 215(a). General Rule.--In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includable in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

In the instant case, the parties agree that the unallocated support payments meet the requirements subparagraphs (A), (B), and (C) of section 71(b)(1). The parties, however, dispute the application of subparagraph (D) of section 71(b)(1). If Mr. Hawley is obligated to make one or more substitute payments after the death of Ms. Gilbert, then none of the unallocated support payments will be considered alimony. See Gonzales v. Commissioner, supra; sec. 1.71-1T(b), Q&A-13, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984).[9]

_____

[9]Mr. Hawley contends that we should follow Simpson v. Commissioner, T.C. Memo. 1999-251 (Pa. case), and Lawton v. Commissioner, T.C. Memo. 1999-243 (Pa. case), which held that unallocated payments are considered alimony. However, those cases considered the application of sec. 71(c) and did not directly address the application of subpar. (D) of sec. 71(b)(1)

(continued...)

In deciding whether the payments were alimony, we examine the language of the February 4, 1992, separation instrument to ascertain whether it contains a termination upon death condition, and, if it does not, whether State law supplies such a condition. Hoover v. Commissioner, 102 F.3d 842, 847 (6th Cir. 1996), affg. T.C. Memo. 1995-183; see Gonzales v. Commissioner, supra; see also Cunningham v. Commissioner, T.C. Memo. 1994-474.

State law determines certain rights of the parties, and Federal law determines the Federal income tax consequences of those rights. Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Lucas v. Earl, 281 U.S. 111 (1930). The February 4, 1992, separation instrument does not explicitly order that payments terminate upon Ms. Gilbert's death, and, thus, we examine Pennsylvania law to determine whether the payments would terminate by operation of Pennsylvania law. Hoover v. Commissioner, supra at 847.

When examining a matter of State substantive law, we will look to a State's highest court to determine the rights of parties under State law. See Estate of Bosch v. Commissioner, 387 U.S. 456, 465 (1967). The Pennsylvania Supreme Court has not decided the narrow legal issue of whether an unallocated support

_____

[9](...continued)
in deciding that the unallocated payments were alimony. Therefore, those cases provide only limited guidance on the issue before us.

order covering spousal and child support terminates upon the death of the payee custodial spouse.

Mr. Hawley contends that we must apply Pa. R.C.P. 1910.16-4(f)(3), 42 Pa. Cons. Stat. Ann. (West 2002), to the instant case, which provides: "Unallocated charging orders for child and spousal support, or child support and alimony pendente lite, shall terminate upon the death of the payee spouse or payee ex-spouse." Pa. R.C.P. 1910.16-4(f)(3) became effective on June 5, 2001. The years in issue are Mr. Hawley's and Ms. Gilbert's 1993, 1994, and 1995 tax years. Pennsylvania statues shall not be construed to apply retroactively "unless clearly and manifestly so intended by the General Assembly." 1 Pa. Cons. Stat. Ann. sec. 1926 (West 1995); see Barnes v. Barnes, 597 A.2d 89, 92 (Pa. 1991); see also Commonwealth v. Rockwell Manufacturing Co., 140 A.2d 854 (Pa. 1958). Pa. R.C.P. 1910.16-4(f)(3) does not indicate that it will have retroactive effect, and consequently we will not apply it retroactively.

Twenty-three Pa. Cons. Stat. Ann. section 4352(a) (West 2001), which addresses the jurisdiction of Pennsylvania courts over divorce proceedings, provides:

SEC. 4352. Continuing jurisdiction over support orders

(a) General rule.-- The court making an order of support shall at all times maintain jurisdiction of the matter for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or

rescinding the order unless otherwise provided by Part VIII (relating to uniform interstate family support) or VIII-A (relating to intrastate family support) without limiting the right of the obligee, or the department if it has an assignment or other interest, to institute additional proceedings for support in any county in which the obligor resides or in which property of the obligor is situated.  The Supreme Court shall by general rule establish procedures by which each interested party shall be notified of all proceedings in which support obligations might be established or modified and shall receive a copy of any order issued in a case within 14 days after issuance of such order. A petition for modification of a support order may be filed at any time and shall be granted if the requesting party demonstrates a substantial change in circumstances.

Twenty-three Pa. Cons. Stat. section 4352 does not explicitly provide that a Pennsylvania court's jurisdiction terminates upon the death of either party to a divorce proceeding.  It does, however, grant Pennsylvania courts continuing jurisdiction over support proceedings.  A party seeking modification or termination of a support order must petition the Pennsylvania court with jurisdiction over the divorce proceedings.  Barnes v. Barnes, supra at 92 (petition to modify); see Soncini v. Soncini, 612 A.2d 998, 1000 (Pa. Super. Ct. 1992) (petition to modify); see also Benjamin v. Benjamin, 596 A.2d 877, 878 (Pa. Super. Ct. 1991) (petition to terminate); Mosier v. McCaughtry, 564 A.2d 241 (Pa. Super. Ct. 1989). Twenty-three Pa. Cons. Stat. section 4352(a) provides strong indication that a Pennsylvania court would retain jurisdiction over a divorce.  This would continue, at least temporarily, if

the payee custodial spouse died, because the statute and caselaw grant courts continuing jurisdiction over support matters and require a petition to modify or terminate support payments.  See Edelstein v. Edelstein, 582 A.2d 1074, 1077 (Pa. Super. Ct. 1990).  In Gonzales v. Commissioner, T.C. Memo. 1999-332, we held (applying New Jersey law) that, when a separation instrument is modifiable, the noncustodial payor spouse could have remained liable to pay support under the separation agreement after the payee spouse's death.

Mr. Hawley contends that the doctrine of abatement applies to the instant cases, and thus the unallocated support order would terminate upon Ms. Gilbert's death.  Before the entry of divorce in Pennsylvania, divorce actions abate upon the death of one of the parties.  Haviland v. Haviland, 481 A.2d 1355, 1356 (Pa. Super Ct. 1984) (citing Matuszek v. Matuszek, 52 A.2d 381 (Pa. Super. Ct. 1947)).[10]  Economic claims for equitable

---

[10]Haviland v. Haviland, 481 A.2d 1355 (Pa. Super Ct. 1984), held that the Pa. Divorce Code applies in pari materia with the Probate Code, and the Divorce Code applies only to living spouses.  Id. at 1357.  However, in dicta, Teribery v. Teribery, 516 A.2d 33, 37-38 (Pa. Super. Ct. 1986), stated that "Should either party die or become disabled, for example, a petition for modification can be filed to reflect changed circumstances."  A court need not consider all contingencies in ordering unallocated support, because it may consider a change in circumstances, such as death, when raised by petition.  Edelstein v. Edelstein, 582 A.2d 1074, 1077 (Pa. Super. Ct. 1990) (citing Teribery v. Teribery, supra).  Under those cases, unallocated support payments may continue after the death of the payee custodial spouse, at least temporarily, until there has been a petition filed to modify the unallocated support order.

distribution of marital property also abate upon the death of a party to the divorce action. <u>Reese v. Reese</u>, 506 A.2d 471, 474 (Pa. Super. Ct. 1986); see <u>Myers v. Myers</u>, 580 A.2d 384, 385 (Pa. Super. Ct. 1990) (ancillary economic claims abate). But see <u>Pastuszek v. Pastuszek</u>, 499 A.2d 1069, 1070-1071 (Pa. Super. Ct. 1985) (no abatement if death occurs after a divorce decree, but before the disposition of equitable claims).

Twenty-three Pa. Cons. Stat. Ann. section 3707 (West 2001), which codifies the doctrine of abatement, provides: "Upon the death of the payee party, the right to receive alimony pursuant to this chapter shall cease."[11] We note, however, that a similar provision does not exist for the termination of child support pursuant to a divorce proceeding. See <u>Garney v. Estate of Hain</u>, 653 A.2d 21, 23 (Pa. Super. Ct. 1995). In Pennsylvania, both parents are equally responsible for their children who are unemancipated and under the age of 18. 23 Pa. Cons. Stat. Ann.

---

[11]We have examined a state statute similar to 23 Pa. Cons. Stat. Ann. sec. 3707 (West 2001). See <u>Ambrose v. Commissioner</u>, T.C. Memo. 1996-128 (Cal. Fam. Code sec. 4337 (West 1994) held to terminate unallocated support payments upon death of custodial spouse). But see <u>Wells v. Commissioner</u>, T.C. Memo. 1998-2 (Cal. Fam. Code sec. 4337 does not automatically terminate unallocated support payments upon death of payee custodial spouse).

sec. 4321 (West 2001);[12] see <u>Oeler v. Oeler</u>, 594 A.2d 649, 651 (Pa. 1991).  In construing an unallocated support agreement, a Pennsylvania court must promote the best interests of the parties' children, <u>Oeler v. Oeler</u>, <u>supra</u>, and assure their uninterrupted maintenance, <u>Ritter v. Ritter</u>, 518 A.2d 319, 322-323 (Pa. Super. Ct. 1986).  For the tax years in issue, the treatment of an unallocated support instrument is ambiguous under Pennsylvania law.  If the instrument addressed only alimony, Mr. Hawley's duty to make payments would terminate on Ms. Gilbert's death.  See 23 Pa. Cons. Stat. sec. 3707.  However, the unallocated separation agreement also covers child support, and Pennsylvania law is ambiguous on that issue.[13]  See <u>Garney v. Estate of Hain</u>, <u>supra</u> (an equivalent to 23 Pa. Cons. Stat. sec. 3707 does not exist for child support); see also <u>Oeler v. Oeler</u>, <u>supra</u> (courts must promote the best interests of children); <u>Ritter v. Ritter</u>, <u>supra</u> (court must ensure the uninterrupted

---

[12]SEC. 4321.  Liability for support.

Subject to the provisions of this chapter:

* * * * * * *

    (2) Parents are liable for the support of their children who are unemancipated and 18 years of age or younger.

[13]Pennsylvania law treats alimony support orders and child support orders differently.  Pa. R.C.P. 1910.16(b), 42 Pa. Cons. Stat. Ann. (West 2002), provides that child support orders are considered to be final and immediately appealable, whereas support orders are considered to be interlocutory.  <u>Mosier v. Mosier</u>, 518 A.2d 843, 847 n.1 (Pa. Super. Ct. 1986).

maintenance of children).  Furthermore, State courts maintain continuing jurisdiction over separation instruments, and petitions are required for modification of such instruments.  23 Pa. Cons. Stat. sec. 4352; see Barnes v. Barnes, 597 A.2d 89 (Pa. 1991).

For the years in issue, Pennsylvania State law does not provide an explicit termination condition on separation instruments.  Nor do we find such a condition in the language of the February 4, 1992, separation instrument itself.

In pertinent part, the February 4, 1992, separation instrument orders:  "An automatic wage attachment shall be issued without notice on Defendant upon default of an amount equal to one month's support obligation or at such other time as the Court may designate."  Mr. Hawley is designated the defendant in the February 4, 1992, separation instrument.  The unallocated support payments do not necessarily cease upon the death of Ms. Gilbert because the Pennsylvania court may attach Mr. Hawley's wages for failure to pay an unallocated support obligation, or attach Mr. Hawley's wages "at such other time as the Court may designate." As a result of such an attachment, Mr. Hawley's liability under the February 4, 1992, separation instrument may extend beyond Ms. Gilbert's death.

In Miller v. Commissioner, T.C. Memo. 1999-273, we examined a provision of an unallocated support order arising from a

divorce in Colorado, which ordered that unallocated support payments continue "until further Order of Court." We conclude that the provision in issue in Miller, is similar to the provision in issue in the instant case because the unallocated support payments may continue beyond the death of the payee spouse at the discretion of the Pennsylvania court. Consequently, we have no reason to conclude that Mr. Hawley's obligation to make unallocated support payments under the February 4, 1992, separation instrument terminates upon the death of Ms. Gilbert. See generally Hoover v. Commissioner, 102 F.3d at 848.

Accordingly, we hold that Mr. Hawley's obligation to provide unallocated support to Ms. Gilbert and their children may continue after the death of Ms. Gilbert and consequently hold that subparagraph (D) of section 71(b)(1) has not been satisfied. Having found the unallocated support payments do not constitute alimony, we hold that Ms. Gilbert is not liable for the section 55 alternative minimum tax.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, or moot.

To reflect the foregoing,

Decisions will be entered

under Rule 155.