T.C. Summary Opinion 2004-120

UNITED STATES TAX COURT

ROBERT L. TOVAR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19073-02S.            Filed September 2, 2004.

Robert L. Tovar, pro se.

Laura A. McKenna, for respondent.

COUVILLION, Special Trial Judge:  This case was heard
pursuant to section 7463 in effect at the time the petition was
filed.[1]  The decision to be entered is not reviewable by any
other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $5,992 in petitioner's
Federal income tax for 2000.

---

[1]    Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code in effect for the
year at issue.

The sole issue for decision is whether a payment of $20,977 by petitioner to his former wife during 2000 constitutes alimony deductible under section 215(a). That issue is resolved by whether the $20,977 payment satisfies the definition of "alimony or separate maintenance payment" under section 71(b)(1)(D).[2]

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner was a legal resident of Cordova, Tennessee.

Petitioner was formerly married to Cynthia Lima, from January 14, 1995, until their divorce on July 19, 2000. There were no children of the marriage. During their marriage, petitioner and Ms. Lima were residents of the State of Florida; they were married in the State of Florida; their matrimonial domicile was in the State of Florida; and their divorce was rendered by a Florida State court.

At the time of their divorce, petitioner and Ms. Lima entered into a Mediated Settlement Agreement (the agreement) dated June 16, 2000. That agreement was incorporated into the divorce decree entitled Final Judgment Dissolving of Marriage (the divorce decree).

---

[2] Another adjustment in the notice of deficiency, a decrease in itemized deductions, is computational and will be resolved by the Court's holding on the principal issue.

The agreement essentially dealt with a division of property between petitioner and Ms. Lima. There were provisions with respect to "Past Debts and Obligations", designation of the marital home to petitioner, a division of their personal belongings, etc. Paragraph 17 of the agreement provided: "WAIVER OF ALIMONY. Each party waives the right to receive alimony or spousal support from the other party." Paragraph 27 stated: "This agreement is and shall be deemed to be a Florida agreement, and shall be governed and construed in all respects by and in accordance with the laws of the State of Florida."

Finally, the agreement provided:

> 6. AGREEMENT IN EVIDENCE/AVOIDANCE OF MERGER. The parties contemplate the dissolution of their marriage. This Agreement is intended to be a full settlement of all matters in any dissolution of marriage action, and if accepted by the Court, shall be incorporated by reference in the Judgment that may be rendered. However, notwithstanding future incorporation in the Judgment, this Agreement shall not be merged in the judgment, but shall survive the judgment, and shall be binding on the parties for all time.

During his marriage, including the year of the divorce, petitioner was employed as an inventory manager for a national retailer, Best Buy, Inc. (Best Buy). He commenced his employment with Best Buy in 1995. At the time of trial, petitioner was still an employee of Best Buy.

As an employee of Best Buy, petitioner earned stock options that entitled him to purchase stock in Best Buy at a set price of

$3 per share, regardless of the current market price of the stock.  In the agreement, it was recognized that Ms. Lima was entitled to one-half of these options, including one-half of the proceeds from some of the options petitioner had exercised a few months earlier (during 2000), and, as to which, petitioner had elected to take cash in lieu of stock.  After the agreement was executed, petitioner exercised additional options and remitted the net entire proceeds from both transactions to Ms. Lima, even though he was required to remit only one-half to her.  For our purposes here, the stock purchased in both transactions cost $6,817 (at $3 per share), and the gross proceeds from sale of the stock were $27,794, resulting in a gain and net proceeds of $20,977, all of which petitioner paid to Ms. Lima.

On his Federal income tax return for 2000, petitioner claimed an alimony deduction of $20,977.  In the notice of deficiency, respondent disallowed the deduction and made no other adjustments (except for the computational adjustments on the itemized deductions).

The sole issue is whether petitioner is entitled to a $20,977 deduction for alimony under section 215(a).[3]

---

[3]     The Court decides this case without regard to the burden of proof under sec. 7491(a), since the facts are not in dispute and the issue is a question of law.

Section 215(a) provides generally that alimony payments are deductible by the payor spouse.  Under section 215(b), "alimony" means any alimony, as defined in section 71(b), which is includable in the gross income of the recipient under section 71. Under section 71(b), the term "alimony or separate maintenance payment" is defined in section 71(b)(1) as any payment in cash meeting the following four criteria:

（A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Petitioner's deduction for alimony is allowable only if the four criteria of section 71(b)(1) are met.  Jaffe v. Commissioner, T.C. Memo. 1999-196.

The Court first notes that, in the agreement, Ms. Lima was recognized as owner of one-half of all unexercised stock options of her husband, petitioner, and, additionally, a substantial

portion of stock options petitioner had exercised prior to the divorce. On this record, the Court is satisfied that a portion of the $20,977 gain from the exercise of the options included the options owned by Ms. Lima. That portion of the distribution to her, therefore, was not alimony but was simply an accounting, a payment, or a distribution to petitioner of property she already owned. With respect to the remainder of the $20,977, respondent's position is that it is not alimony under section 71(b)(1)(D).[4]

Section 71(b)(1)(D) requires, as a condition to qualify as alimony, that the obligation to pay terminate upon the death of the former spouse. If the payer is liable for even one otherwise qualifying payment after the recipient's death, none of the related payments required before death will be alimony. Sec. 1.71-1T(b), Q&A-13, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984). Whether such obligation exists may be determined by the terms of the applicable instrument, or if the instrument is silent on the matter, by looking to State law. Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Gilbert v.

---

[4] The Court recognizes that, because, in the agreement, the parties expressly waived the right to alimony, it is plausible to conclude that the transfer or payment of the remainder of the net proceeds from exercise of the stock options to Ms. Lima was voluntary and, perhaps, a gift and, therefore, not deductible. Respondent, however, did not make such a contention, and, since the parties framed the issue as alimony, the Court decides the case on that basis.

Commissioner, T.C. Memo. 2003-92, affd. sub nom. Hawley v.
Commissioner, 94 Fed. Appx. 126 (3d Cir. 2004); Kean v.
Commissioner, T.C. Memo. 2003-163.

The Court agrees with respondent that the payment at issue
is not alimony under section 71(b)(1)(D) because, under the terms
of the agreement and under Florida law, petitioner's obligation
to make the payment would have continued if Ms. Lima had died
prior to payment of the stock option proceeds.  In Canakaris v.
Canakaris, 382 So.2d 1197, 1201 (Fla. 1980), the Florida Supreme
Court stated:

> Although the award of lump sum alimony is not dependent
> upon a finding of a prior vested right, there does arise
> upon the entry of a final judgment of a lump sum award a
> vested right which is neither terminable upon a spouse's
> remarriage or death nor subject to modification.  It may
> consist of real or personal property, or may be a monetary
> award payable in installments.  Jurisdiction may be
> expressly retained, however, to terminate lump sum alimony
> installment payments upon a spouse's remarriage or death
> when the parties agree to such a provision in a property
> settlement agreement.  Further, jurisdiction may be retained
> to enter periodic alimony if found necessary after such
> termination of lump sum alimony installment payments. * * *

Not only did the agreement and the divorce decree fail to provide
that petitioner's obligation for payment of the stock option
proceeds would terminate upon the prior death of Ms. Lima, there
were also no reservations that would have allowed the parties
thereafter to incorporate such a condition upon petitioner's

liability.  Moreover, the agreement specifically states that each party waived the right to alimony.

Petitioner argues that the $20,977 was included as income on his 2000 income tax return, and, therefore, if he was required to report the stock option proceeds as income, he should be entitled to an alimony deduction.  The Court rejects that argument for two reasons.  First, a payment as alimony qualifies as a deduction only if it meets the criteria of section 71(b)(1).  As discussed earlier, petitioner's payments to Ms. Lima failed to satisfy section 71(b)(1)(D).  Secondly, in arguing that he included the stock option proceeds as income on his 2000 income tax return, petitioner implies that he paid taxes on that income and, therefore, is entitled to a deduction for payment of that income to Ms. Lima.  That argument fails because petitioner did not pay income taxes on the sales proceeds of the stock options as he infers.  The option proceeds are not identified by the issuance of any information returns filed by the payor, and, moreover, petitioner did not compute a tax on the option proceeds he received.  Petitioner's return includes a Schedule D, Capital Gains and Losses, on which he reported a short-term capital gain transaction.  On Part I of the schedule, he listed the Best Buy options, listed a gross sales price of $27,794, a cost/basis of $27,794, and a zero gain or loss.  Petitioner, therefore, paid no

income tax on this transaction, contrary to his argument.[5]  The Court, therefore, rejects petitioner's argument that he should be allowed a deduction for payment of an amount he reported as income.  Respondent is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.

---

[5]    As noted earlier, petitioner's basis in the stock options was $6,817, and, theoretically, that amount should have been listed on Schedule D as the "Cost or other basis", which would have resulted in a gain of $20,977.  Respondent made no adjustments in the notice of deficiency to reflect such a gain, presumably in deference to the terms of the agreement between petitioner and his former spouse, which provides that each party was responsible for income taxes on their respective returns. Petitioner's former wife did not testify at trial, her income tax return was not offered in evidence, and counsel for respondent did not indicate to the Court how the former spouse treated the stock option proceeds on her return.  Since the proceeds were all distributed to the former wife, the tax, if any, on those proceeds rested with her.  Sec. 1041.