T.C. Summary Opinion 2007-28

UNITED STATES TAX COURT

NADA NAHHAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3235-05S.                Filed February 27, 2007.

<u>Glenn Seiden</u>, for petitioner.

<u>Thomas D. Yang</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $23,860 deficiency in petitioner's 2002 Federal income tax. Respondent also determined an addition to tax under section 6651(a)(1) and an accuracy-related penalty under section 6662 in the amounts of $2,386 and $4,772, respectively.

The issues before the Court are: (1) Whether $122,200 is includable in petitioner's income as alimony; (2) whether petitioner failed to report $2,317 in interest income; (3) whether petitioner is liable for the alternative minimum tax;[1] (4) whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to timely file; and (5) whether petitioner is liable for the accuracy-related penalty.

## Background

Some of the facts are stipulated and are so found. At the time the petition in this case was filed, petitioner resided in Orland Park, Illinois.

Petitioner and Mohammed M. Nahhas (Mr. Nahhas) were married on July 31, 1980. Three children were born in the marriage, NN,

---

[1] Respondent has determined that petitioner is liable for alternative minimum tax for her 2002 taxable year. This issue is computational in nature and will be addressed in a Rule 155 computation.

MN, and MN.[2]  On or about December 29, 2001, Mr. Nahhas moved out of the marital residence.  In early 2002, petitioner filed a petition with the Circuit Court of Cook County, Illinois, Domestic Relations Division (circuit court) to commence divorce proceedings against Mr. Nahhas.

On April 10, 2002, the circuit court entered a temporary order for maintenance and support.  The order provides, in pertinent part:

> Without prejudice, Mohammed shall pay to Nada as and for unallocated maintenance & support the amount of $13200NN/month, payable on 15th and 30th each month, 1st payment 6600 due 4-15-02.

On May 29, 2002, the circuit court entered an agreed order and stated that the temporary order would remain in effect until further order of the Court.

On December 24, 2002, the court entered an order amending the temporary order by reducing the "unallocated maintenance and support" obligation of Mr. Nahhas from $13,200 per month to $9,700 per month effective January 1, 2003.  The reduction was based on changes in an affidavit of expenses provided by petitioner and an affidavit of monthly income provided by Mr. Nahhas.

On December 15, 2003, the circuit court entered a judgment for dissolution of marriage between petitioner and Mr. Nahhas.

---

[2] The Court uses only the initials of the minor children.

The judgment provided, in the findings section:

> 11. The Court finds this is a case that utilizing the factors in Section 504 for an award of permanent maintenance is warranted. The Court ordered unallocated support shall be in the amount of $7,500.00 per month. The payment of unallocated maintenance and support from the Husband to the wife shall be reviewed when the youngest child attains the age of 18 years old. The maintenance portion of unallocated maintenance and support shall be permanent.
>
> *    *    *    *    *    *    *

Further, the ordered, adjudged, and decreed part of the order provided:

> C. That [Mr. Nahhas] shall pay to [petitioner] the sum of $7,500.00 per month as and for the unallocated support of his family. It is the intention of the Court that such sum shall be taxable to [petitioner] and deductible by [Mr. Nahhas]. Further the duration of such award shall be until the minor child reaches 18 years of age. That [Mr. Nahhas] is barred from any claim for maintenance from [petitioner].

On Line 11 of her Federal income tax return, petitioner reported income of $105,600 as alimony received but lined out this figure and reported only $13,715 of Schedule C, Profit or Loss from Business income.[3]

## Discussion

The Commissioner's determinations are presumed correct, and taxpayers generally bear the burden of proving otherwise. Welch

---

[3] Apparently the $105,600 amount represents 8 monthly payments of $13,200 or 16 bi-monthly payments of $6,600. However if one uses the Apr. 15, 2002, effective payment date, as provided by the temporary order, 9 monthly or 18 bimonthly payments were made in 2002 totaling $118,800.

 v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner did not argue that section 7491 is applicable in this case, nor did he establish that the burden of proof should shift to the respondent.  Moreover, the issues involved in this case (alimony and the alternative minimum tax) are legal issues and should be decided on the record without regard to the burden of proof.  Petitioner, however, bears the burden of proving that respondent's determination in the notice of deficiency is erroneous.  See Rule 142(a); Welch v. Helvering, supra at 115.

An individual may deduct from his or her gross income the payments he or she made during a taxable year for alimony or separate maintenance.  Sec. 215(a).  Conversely, the recipient of alimony or separate maintenance payments must include those payments when calculating his or her gross income.  Sec. 61(a)(8).

Section 71(b)(1) defines "alimony or separate maintenance payment" as any payment in cash if:

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

> (B) the divorce or separation instrument does not designate such payment as a payment which is not includable in gross income under this section and not allowable as a deduction under section 215,

> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

The test under section 71(b)(1) is conjunctive; a payment is deductible as alimony only if all four requirements of section 71(b)(1) are present. See Jaffe v. Commissioner, T.C. Memo. 1999-196.

Section 71(b)(2) defines a "divorce or separation instrument" as:

(A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,

(B) a written separation agreement, or

(C) a decree (not described in a subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

Section 71(c)(1) provides that the general inclusion rule of section 71(a) for alimony and separate maintenance payments in gross income does not apply to "any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of the children of the payor spouse."

I.   Characterization of Monthly Payments

Petitioner argues that none of the monthly payments she received in 2002 as "unallocated maintenance and support" from Mr. Nahhas should be included in her gross income since the amounts are properly characterized as nontaxable child support.

Respondent disagrees and contends that the payments made in 2002 to petitioner qualified as alimony taxable to petitioner as the recipient under section 71(b). In particular, respondent notes that the temporary order did not expressly provide that the payments were not includable in petitioner's gross income and not allowable as a deduction by Mr. Nahhas under section 71(b)(1)(B). Moreover, respondent points out that the temporary order did not "fix" any portion of the payment as payable for the support of the children as required by section 71(c)(1) for child support. We agree with respondent.

It is clear from the record that the 2002 payments satisfy the requirements of subparagraphs (A) and (C) of section 71(b). Petitioner received the payments under the terms of the temporary order, and petitioner and Mr. Nahhas were not members of the same household in 2002.

The Court now considers section 71(b)(1)(B), which provides that a payment will not be alimony if the divorce or separation instrument designates the payment as not includable in gross income and not allowable as an alimony deduction. The designation in the divorce or separation instrument does not need to specifically refer to section 71 or 215. Estate of Goldman v. Commissioner, 112 T.C. 317, 323 (1999), affd. without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000). The divorce or separation instrument, however, "must

contain a clear, explicit and express direction" that the payments are not to be treated as alimony. Richardson v. Commissioner, 125 F.3d 551, 556 (7th Cir. 1997), affg. T.C. Memo. 1995-554.

The Court declines petitioner's invitation to go beyond the language of the temporary order. The plain language of section 71(b)(1)(B) provides that when, under the divorce or separation instrument, the payment by one spouse to the other spouse is not includable in the gross income of the receiving spouse and is not allowable as a deduction to the payor spouse, the payments do not constitute alimony. In this case, the language contained in the temporary order does not expressly state that the payments are not includable in petitioner's gross income and not deductible to Mr. Nahhas, and section 71(b)(1)(B), therefore, is satisfied.[4]

Next, the Court considers the requirements of section 71(b)(1)(D), which requires, as a condition to qualify as alimony, that the obligation to make payments must terminate upon the death of the former spouse. If the payor is liable for even one otherwise qualifying payment after the recipient's death, none of the related payments required before death will be alimony. Sec. 1.71-1T(b), Q&A-13, Temporary Income Tax Regs., 49

---

[4] The Court observes that, unlike the temporary order, the final judgment of dissolution contains express language providing that the payments would be taxable to petitioner and deductible by Mr. Nahhas.

Fed. Reg. 34456 (Aug. 31, 1984).  Whether such obligation exists may be determined by the terms of the applicable instrument, or if the instrument is silent on the matter, by looking to State law.  Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Kean v. Commissioner, T.C. Memo. 2003-163, affd. 407 f.3d 186 (3d Cir. 2005); Gilbert v. Commissioner, T.C. Memo. 2003-92, affd. sub nom. Hawley v. Commissioner, 94 Fed. Appx. 126 (3d Cir. 2004).  Thus, to qualify as alimony, the obligation of Mr. Nahhas to make the payments must terminate at the death of petitioner.

In deciding whether the 2002 payments were alimony, the Court looks to the language of the temporary order to ascertain whether it contains a termination upon death condition, and, if it does not, whether State law supplies such a condition.  Hoover v. Commissioner, 102 F.3d 842, 847 (6th Cir. 1996), affg. T.C. Memo. 1995-183; see Gonzales v. Commissioner, T.C. Memo. 1999-332; see also Cunningham v. Commissioner, T.C. Memo. 1994-474.  State law determines certain rights of the parties, and Federal law determines the Federal income tax consequences of those rights.  Morgan v. Commissioner, supra at 80; Lucas v. Earl, 281 U.S. 111 (1930).

In this instance, the temporary order does not explicitly order that the payments terminate upon petitioner's death, and, thus, the Court looks to Illinois law to determine whether the

payments would terminate by operation of Illinois law.  Hoover v. Commissioner, supra at 847.

Neither party has addressed the application of section 71(b)(1)(D).  Further, neither party cites, nor are we aware of, any Illinois cases addressing the issue of whether, absent an agreement of the parties or a directive in the divorce decree, an obligation to pay unallocated maintenance and support terminates upon the death of the payee spouse.

The Court concludes that the payments qualify as alimony under section 71(b)(1)(D).  Section 510(c) of the Illinois Dissolution of Marriage Act provides "the obligation to pay future maintenance is terminated" upon the death, remarriage, or cohabitation of the recipient "Unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court."  750 Ill. Comp. Stat. Ann. 5/10(c) (West 1999).  Thus, under Illinois law, there is an automatic termination of the unallocated maintenance portion of the payments.  See id.

Contrary to petitioner's argument that the payments are nontaxable child support, the temporary order provided for monthly or bimonthly payments in the total amount of $13,200 per month for "unallocated maintenance and support."  The temporary order does not "contain a clear, explicit and express direction" that the payments are not includable in petitioner's gross income

and are not allowable as a deduction to Mr. Nahhas.  <u>Richardson v. Commissioner</u>, <u>supra</u> at 556.

Petitioner argues that the payments were always intended to be nontaxable child support.  To support her contention, petitioner presented testimony at trial that the dollar amounts provided for in the temporary order were based on guidelines set forth under State law for child support.  In addition, petitioner's attorney during the marital dissolution proceedings testified at length that he intended that the payments under the temporary order to be for child support and, hence, nontaxable to petitioner.[5]

The Court concludes that the payments do not qualify as child support under section 71(c)(1).

Thus, petitioner received alimony under the temporary order in 2002 in the amount of $118,800.  ($13,200 per month x 9 months).

II.  <u>Interest Income</u>

Generally, gross income means all income from whatever source derived, including interest income.  Sec. 61(a)(4).  During 2002, respondent received information from third-party payers that petitioner received interest income from three

---

[5] Petitioner's attorney evidently drafted the temporary order after a hearing and at the direction of the circuit court.  Upon review, the circuit court adopted the temporary order.

separate bank accounts.  The bank accounts and interest income
were:

| | |
|---|---:|
| Harris Bank ARGO | $1,201.00 |
| Heritage Community Bank | 1,086.00 |
| Citibank F.S.B. | 30.00 |

At trial, petitioner's attorney during the marital
dissolution proceedings credibly testified that an escrow account
was opened that contained funds from both petitioner and Mr.
Nahhas.  Ownership of the funds in the escrow account was
transferred to petitioner in 2003 under the December 15, 2003,
judgment for final dissolution.  Petitioner confirmed that the
escrow account was located at the Harris Community Bank.
Petitioner, however, did not address the ownership of either the
Heritage or Citibank bank accounts in 2002.

It is a general rule of taxation that income is not
constructively received if a taxpayer's control of its receipt is
subject to substantial limitations or restrictions.  See sec.
1.451-2(a), Income Tax Regs.  Moreover, it is well established
that "gross income" generally refers to assets over which the
taxpayer can exercise "dominion and control."  Ianniello v.
Commissioner, 98 T.C. 165, 173 (1992).  Thus, when amounts are
deposited in an escrow account beyond that taxpayer's reach, they
generally are not includable in his gross income.  See, e.g.,
Reed v. Commissioner, 723 F.2d 138 (1st Cir. 1983) (no receipt

where escrow arrangement was bona fide deferred payment agreement between buyer and seller), revg. T.C. Memo. 1982-734

Based on the record, the Court finds that petitioner retained an interest in the Heritage and Citibank bank accounts in 2002, and therefore such income is includable in her gross income. The Court further finds that the interest income from the escrow account at the Harris Community Bank is not includable in petitioner's gross income for 2002.

III. Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax equal to 5 percent of the amount required to be shown as tax on a return for each month or fraction thereof past the prescribed due date in which the return is not filed, not to exceed a total of 25 percent. Generally, the amount of the addition to tax under section 6651(a)(1) is reduced by the amount of any addition to tax imposed under section 6651(a)(2) (which relates to failure to pay the tax shown on a return by the prescribed date) with respect to each month in which both are otherwise applicable. Sec. 6651(c)(1).

A taxpayer may avoid the addition to tax under section 6651(a)(1) if he establishes that the failure to file is due to reasonable cause and not due to willful neglect. "Reasonable cause" requires the taxpayer to demonstrate that he exercised ordinary business care and prudence and was nonetheless unable to

file a return within the prescribed time.  <u>United States v. Boyle</u>, 469 U.S. 241, 246 (1985).  "[W]illful neglect" means a conscious, intentional failure or reckless indifference.  <u>Id.</u> at 245.

Although respondent bears the burden of production with respect to this addition to tax, petitioner ultimately bears the burden of proof.  Sec. 7491(c); Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. 438 (2001).

In the absence of an extension, the last date for petitioner to file her Federal income tax return for taxable year 2002 was April 15, 2003.  Instead, petitioner filed her 2002 return on May 27, 2003.

Petitioner did not attempt to explain the failure to file and provided no indication that she had reasonable cause therefor.  Respondent has therefore satisfied his burden of production by establishing that petitioner filed her return late. We sustain respondent's determination that petitioner is liable for the addition to tax under section 6651(a)(1).

IV.  <u>Accuracy-Related Penalty</u>

The last issue for decision is whether petitioner is liable for an accuracy-related penalty pursuant to section 6662(a) for the 2002 taxable year.  A taxpayer is liable for an accuracy-related penalty of 20 percent of any part of an underpayment attributable to negligence or disregard of rules or regulations.

Sec. 6662(a) and (b)(1). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); Gowni v. Commissioner, T.C. Memo. 2004-154. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

The accuracy-related penalty does not apply to any part of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Id. Here, the income tax return in question was prepared by someone from Abbasi Accounting and Tax Services. We note that on line 11 of the income tax return for reporting "Alimony received" the amount of $105,600 originally reported was lined-out. As previously noted this amount represents $13,200 received for 8 months in 2002. Petitioner reported only $13,915 of Schedule C income. Evidently, either the tax return preparer

or petitioner recognized that the payments petitioner received could be alimony.

Section 7491(c) places on the Commissioner the burden of producing evidence showing that it is appropriate to impose any penalty or addition to tax. Once the Commissioner meets that burden, the taxpayer must produce evidence sufficient to show that Commissioner's determination is incorrect. Higbee v. Commissioner, supra at 447. The Commissioner need not produce evidence relating to defenses such as reasonable cause. Id. at 446.

Petitioner does not contest receiving the 2002 payments from Mr. Nahhas. Petitioner's position that the amounts were nontaxable child support clearly conflicts with the designation of the payments as "unallocated maintenance and support" in the temporary order. Petitioner also did not report interest income received from the Heritage and Citibank bank accounts. Accordingly, we conclude that respondent has met his burden of production for the ground of negligence by showing that petitioner failed to exercise ordinary and reasonable care in preparing her 2002 tax return. See sec. 6662(c); Gowni v. Commissioner, supra.

With respect to the inclusion of the 2002 payments in her gross income, petitioner testified that she relied on the representation made by the attorney who represented her in the

marital dissolution proceeding that the amounts were not taxable. Reliance on an attorney may relieve a taxpayer from the accuracy-related penalty where the taxpayer's reliance is reasonable. Stolz v. Commissioner, T.C. Memo. 1999-404. However, in this case, petitioner's attorney did not draft the temporary order to provide that the amount for support or temporary maintenance was not includable in her income, and therefore, these facts do not support reasonable cause. Petitioner's reliance on the divorce attorney also does not constitute reasonable cause, as she failed to show that the attorney was skilled or knowledgeable in the tax consequences of the divorce proceeding. Therefore, we sustain respondent's determination of the penalty under section 6662(a) and (b)(1) for taxable year 2002.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.