T.C. Memo. 2003-163


UNITED STATES TAX COURT


PATRICIA P. KEAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ROBERT W. KEAN, III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 8966-00, 9144-00.          Filed June 4, 2003.


        R determined deficiencies for W's 1992, 1993,
1994, 1995, and 1996 taxable years.  R determined
deficiencies for H's 1995 and 1996 years.  R's
determinations were based upon R's inconsistent
position that payments made by H to W, pursuant to
pendente lite unallocated support orders, were
includable in the gross income of W as alimony
received, and not deductible by H as alimony paid.

        <u>Held</u>:  The payments H made to W meet the criteria
of sec. 71(b)(1), I.R.C.  Specifically, the payments
were received by W and, pursuant to State law, would
have terminated at W's death.  Consequently, the
payments are alimony for Federal income tax purposes,
and are deductible by H, under sec. 215, I.R.C., and
includable in the gross income of W, under secs.
61(a)(8) and 71(a), I.R.C.

Alan R. Adler, for petitioner in docket No. 8966-00.

Jeffrey M. Garrod and Eugenia Yudanin, for petitioner in docket No. 9144-00.

Joseph J. Boylan, for respondent.


MEMORANDUM OPINION


NIMS, Judge:  Respondent determined deficiencies in the Federal income tax of petitioner Patricia P. Kean (Ms. Kean) for taxable years 1992, 1993, 1994, 1995, and 1996 of $14,299, $17,419, $20,116, $18,390, and $4,393, respectively.  Respondent also determined additions to tax pursuant to section 6651(a)(1) for 1992 and 1994 of $3,557 and $5,029, respectively.  Respondent determined deficiencies in the Federal income tax of petitioner Robert W. Kean III (Mr. Kean) for the taxable years 1995 and 1996 of $27,584 and $16,781, respectively.

After concessions, the issue remaining to be decided is whether any part of the unallocated support payments constitutes alimony under section 71 that is deductible by the payor spouse, Mr. Kean, under section 215, and includable in the gross income of the payee spouse, Ms. Kean, under sections 61(a)(8) and 71(a). In the notices of deficiency respondent took inconsistent positions, in that respondent disallowed deductions to Mr. Kean and required Ms. Kean to report alimony income.  On brief,

however, respondent argues that Mr. Kean should be allowed the deductions and Ms. Kean should report alimony income.

These cases have been consolidated for purposes of briefing and opinion because they involve common questions of law and fact arising from the separation and divorce of Mr. Kean and Ms. Kean (hereinafter collectively referred to as petitioners).

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

These cases were submitted fully stipulated pursuant to Rule 122, and the facts are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

## Background

Ms. Kean resided in Lawrenceville, New Jersey, when she filed her petition. Mr. Kean resided in Far Hills, New Jersey, when he filed his petition.

Petitioners were married on September 12, 1970, in Glen Cove, New York. Petitioners have three children born in the marriage: (1) Robert W. Kean IV (born January 26, 1979), (2) Philip E. Kean (born August 23, 1982), and (3) Cristina D. Kean (born September 4, 1984) (collectively referred to as the children).

Ms. Kean brought an action for divorce from Mr. Kean on October 1991, in the Superior Court of New Jersey, Chancery Division-Family Part, Somerset County.  On April 7, 1992, Graham T. Ross, J.S.C., P.J.F.P. (Judge Ross), issued an order (April 7, 1992, Order), which required that Mr. Kean deposit no less than $6,000 each month into a joint checking account, which was maintained in the names of Mr. Kean and Ms. Kean.  The April 7, 1992, Order granted Ms. Kean unlimited access to the joint checking account and checkbook, and she was ordered to use funds from the joint checking account to maintain herself, the children, and the household.  The April 7, 1992, Order also required that Mr. Kean:  (1) Pay all household expenses, including, but not limited to, the mortgage, taxes, and utilities; (2) pay all expenses for the children, including, but not limited to, private school tuition; and (3) maintain insurance coverage and pay all unreimbursed expenses for health and medical needs of Ms. Kean and the children.

On November 25, 1992, Judge Ross issued an order (November 25, 1992, Order), which denied Mr. Kean and Ms. Kean's separate applications for physical custody of the children, required that Mr. Kean and Ms. Kean continue existing custodial arrangements, and required that Mr. Kean and Ms. Kean share equally in the legal authority and responsibility for major decisions concerning the children.

On March 5, 1993, Judge Ross issued an order (March 5, 1993, Order), which granted Ms. Kean exclusive use of the $6,000 Mr. Kean deposited into the joint checking account and required that the money from that account be used to support Ms. Kean, the children, and the household. The March 5, 1993, Order enjoined Mr. Kean from using the money deposited into the joint account to pay a note at National State Bank or to pay any other expense.

On April 23, 1993, Judge Ross issued an order (April 23, 1993, Order), which defined the obligations to be paid from the $6,000 Mr. Kean deposited into the joint checking account as all shelter, transportation, and personal expenses of Ms. Kean and the children.

On January 30, 1995, Judge Ross issued an order (January 30, 1995, Order), which required that Mr. Kean make future payments to Ms. Kean through the applicable probation department.

On January 9, 1996, Judge Ross issued an order (January 9, 1996, Order), which continued Mr. Kean and Ms. Kean's joint legal custody of the children and specified how physical custody of the children should be shared between Mr. Kean and Ms. Kean.

On April 11, 1996, Judge Ross issued an order (April 11, 1996, Order), which reduced the pendente lite support Mr. Kean was to pay to Ms. Kean from $6,000 to $1,600, effective April 1,

1996.  The April 11, 1996, Order also required that Mr. Kean pay all household bills and expenses of the children, effective April 1, 1996.

Judge Ross issued a Final Judgment of Divorce on February 19, 1997.

For the taxable year 1992, Mr. Kean made payments to Ms. Kean, pursuant to the April 7, 1992, Order, in the amount of $54,000, by either depositing checks into the joint checking account or issuing checks to Ms. Kean, which were thereafter deposited into the joint checking account.  Ms. Kean reported no alimony income on her 1992 U.S. Individual Income Tax Return.

For taxable year 1993, Mr. Kean made payments to Ms. Kean, pursuant to the April 7, 1992, Order and the March 5, 1993, Order, in the amount of $57,388, by either depositing checks into the joint checking account or issuing checks to Ms. Kean, which were thereafter deposited into the joint checking account.  Ms. Kean reported no alimony income on her 1993 U.S. Individual Income Tax Return.

For the taxable year 1994, Mr. Kean made payments to Ms. Kean, pursuant to the April 7, 1992, Order and the March 5, 1993, Order, in the amount of $71,500, by either depositing checks into the joint checking account or issuing checks to Ms. Kean, which

were thereafter deposited into the joint checking account. Ms. Kean reported no alimony income on her 1994 U.S. Individual Income Tax Return.

From January 1 through February 10, 1995, Mr. Kean made payments to Ms. Kean, pursuant to the April 7, 1992, Order and the March 5, 1993, Order, in the amount of $9,000, by either depositing checks into the joint checking account or issuing checks to Ms. Kean, which were thereafter deposited into the joint checking account. From March 6 through December 7, 1995, Mr. Kean made payments, pursuant to the April 7, 1992, Order, the March 5, 1993, Order, and the January 30, 1995, Order, through the Somerset County Probation Department, to Ms. Kean, in the amount of $61,200. Ms. Kean reported no alimony income on her 1995 U.S. Individual Income Tax Return. Mr. Kean claimed a deduction for alimony paid of $72,000 on his 1995 U.S. Individual Income Tax Return.

For the taxable year 1996, Mr. Kean made payments, pursuant to the April 7, 1992, Order, the March 5, 1993, Order, the January 30, 1995, Order, and the April 11, 1996, Order, through the Somerset County Probation Department, to Ms. Kean, in the amount of $32,400. Ms. Kean reported $14,400 in alimony income on her 1996 U.S. Individual Income Tax Return. Mr. Kean claimed a deduction for alimony paid of $37,715 on his 1996 U.S. Individual Income Tax Return.

For taxable years 1992 through 1996, Mr. Kean and Ms. Kean were not legally separated under a decree of divorce or separate maintenance.

Pursuant to court orders, the payments made by Mr. Kean to Ms. Kean during the period of April 7, 1992, through February 1995, were deposited into the joint checking account. Pursuant to court order, during the period of March 6, 1995, through December 1996, Mr. Kean made payments to the account of Ms. Kean with the Somerset County Probation Department. The checks received by Ms. Kean from the Somerset County Probation Department were deposited by her into the joint checking account.

From at least March 5, 1993, through December 1996, Mr. Kean did not make any withdrawals or write any checks on the joint checking account.

Ms. Kean filed her U.S. Individual Income Tax Return for 1992 late on June 8, 1998. Ms. Kean filed her U.S. Individual Income Tax Return for 1993 on January 22, 1996. Respondent did not determine a penalty for failure timely to file an income tax return for 1993. Ms. Kean filed her U.S. Individual Income Tax Return for 1994 late on January 29, 1996. Ms. Kean filed her U.S. Individual Income Tax Return for 1995 on October 11, 1996. Her 1995 return was filed within a permitted extension of time to file. Ms. Kean timely filed her U.S. Individual Income Tax Return for 1996 on April 15, 1997.

Mr. Kean filed his U.S. Individual Income Tax Return for 1995 on July 8, 1996.  Mr. Kean submitted Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, which provided an automatic extension of time to file his 1995 return to August 15, 1996.  Mr. Kean filed his U.S. Individual Income Tax Return for 1996 on October 17, 1997. Respondent did not determine a penalty for failure timely to file an income tax return for 1996.

From January 1 through September 1992, the children resided with both Mr. Kean and Ms. Kean at 144 Lake Road, Far Hills, New Jersey (the marital residence).  During October and November 1992, the children resided with Ms. Kean outside the marital residence.  In December 1992, Ms. Kean and the children returned to the marital residence, where the children resided with Mr. Kean and Ms. Kean until at least January 1996.

## Discussion

### I.  General Rules

We consider whether certain payments (disputed payments), made pursuant to court orders issued during the pendency of a divorce proceeding, are to be treated as alimony for Federal income tax purposes.  Generally, alimony and separate maintenance payments (hereinafter collectively referred to as alimony) are

taxable to the recipient and deductible by the payor.  Secs. 61(a)(8), 71, 215.  Whether a payment constitutes alimony is determined by reference to section 71(b).

Section 71(b) provides:

SEC. 71(b).  Alimony or Separate Maintenance Payments Defined.--For purposes of this section--

(1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

## II.  Parties' Contentions

The disputed payments were made pursuant to orders that did not specifically allocate a portion of the amount as alimony or as child support, but, rather, required that the money be used to maintain Ms. Kean, the children, and the household.  Respondent and Mr. Kean argue that these payments should be treated as alimony.  Ms. Kean argues that the payments should not be treated as alimony.

The parties agree that the disputed payments meet the requirements of section 71(b)(1)(B).  The parties agree that the requirements of section 71(b)(1)(C) do not apply because Mr. Kean and Ms. Kean were not legally separated under a decree of divorce or separate maintenance when the disputed payments were made.  Ms. Kean argues that the disputed payments do not satisfy the requirements of section 71(b)(1)(A) or (D).  Respondent and Mr. Kean argue that the disputed payments satisfy these requirements.

## III.  Section 71(b)(1)(A)

As to the requirements of section 71(b)(1)(A), Ms. Kean argues that she did not receive the payments.  Despite this contention, Ms. Kean stipulated that Mr. Kean made each of the disputed payments to her by either depositing money directly into the joint checking account; issuing checks to her, which were then deposited into the joint checking account; or making a payment on her behalf with the Somerset County Probation

Department.  In light of these stipulations, we find disingenuous Ms. Kean's current claim not to have received payments from Mr. Kean.  Consequently, we find that the disputed payments satisfy the requirements of section 71(b)(1)(A).

IV.  Section 71(b)(1)(D)

The remaining dispute involves the requirements of section 71(b)(1)(D).  These requirements are satisfied if Mr. Kean had "no liability to make any such payment for any period after the death of the payee spouse [Ms. Kean] and there * * * [was] no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse."  Sec. 71(b)(1)(D).  If the payor is liable for even one otherwise qualifying payment after the recipient's death, none of the related payments required before death will be alimony.  Sec. 1.71-1T(b), Q&A-13, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984).  Whether such obligation exists may be determined by the terms of the applicable instrument, or if the instrument is silent on the matter, by looking to State law. Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Gilbert v. Commissioner, T.C. Memo. 2003-92.

The orders issued by Judge Ross did not indicate whether the disputed payments would terminate at Ms. Kean's death.  We agree

with the stipulation made by the parties that the orders should be interpreted under New Jersey law since they were issued by a New Jersey court.

New Jersey has a support statute authorizing courts to award alimony or child support, either pending the divorce suit or after final judgment. N.J. Stat. Ann. sec. 2A:34-23 (West 2003). Generally, divorce proceedings abate with the death of either party. Carr v. Carr, 576 A.2d 872, 875 (N.J. 1990). Despite the general rule that divorce proceedings abate with the death of either party, "Some New Jersey courts have recognized that in highly unusual circumstances some aspects of statutory equitable distribution and related forms of relief may precede a divorce judgment or survive a spouse's death before divorce." Id.

The obligation to pay alimony ends at the recipient's death. See Jacobson v. Jacobson, 370 A.2d 65, 66 (N.J. Super. Ct. Ch. Div. 1976). The obligation to pay child support survives the death of either spouse. See Kiken v. Kiken, 694 A.2d 557, 561-562 (N.J. 1997); Jacobson v. Jacobson, supra at 66. Regarding the death of the custodial parent, New Jersey statutory law provides:

> In case of the death of the parent to whom the care and custody of the minor children shall have been awarded by the Superior Court, or in the case of the death of the parent in whose custody the children actually are, when the parents have been living separate and no award as to the custody of such children has been made, the care and custody of such

minor children shall not revert to the surviving parent without an order or judgment of the Superior Court to that effect. * * * [N.J. Stat. Ann. sec. 9:2-5 (West 2003).]

New Jersey law does not specify whether unallocated support payments terminate on the death of the payee spouse. Ms. Kean relies on Gonzales v. Commissioner, T.C. Memo. 1999-332, in which this Court held that New Jersey law would not necessarily have relieved the payor spouse of his obligation to pay family support had the payee spouse died before entry of the divorce judgment, under the particular circumstances of that case.

Respondent and Mr. Kean argue that the decision in Gonzales is not applicable to the instant case. They argue that Gonzales was wrongly decided and, alternatively, that the facts of the instant case distinguish it from the facts of Gonzales. The factual distinction highlighted by respondent and Mr. Kean involves custody of the children. In Gonzales, the payee spouse had primary residential custody of the children. In the instant case, Mr. Kean and Ms. Kean shared a residence with the children for most of the period during which the disputed payments were made, and the orders make it clear that they shared custody of the children during the period when the disputed payments were made.

The Court in Gonzales v. Commissioner, supra, concluded that "The fact that the unallocated support order is modifiable and temporary tells us, at the least, that a court might have reduced

Dr. Gonzales' payments rather than terminate them altogether. Indeed, there are no counterindications." The Court also stated, however, that had the payee spouse "died before the superior court entered the divorce decree, Dr. Gonzales, as the <u>noncustodial parent</u> of three children, could have remained liable to pay family support, whether in full or in diminished amounts." (Emphasis added.)

Conceivably, the facts in <u>Gonzales</u> could fall within the "highly unusual circumstances" referred to by the New Jersey Supreme Court in <u>Carr v. Carr</u>, <u>supra</u> at 875, that provide an exception to the general rule that divorce proceedings abate with the death of either party. In any event, the holding of <u>Gonzales</u> was essentially based upon the fact that the payor spouse was a noncustodial parent. Since, under N.J. Stat. Ann. sec. 9:2-5 (West 2003), quoted above, custody does not automatically revert to the noncustodial parent when the custodial parent dies, the <u>Carr v. Carr</u>, <u>supra</u>, exception could perhaps be held to apply under facts like those in <u>Gonzales</u>, and, assuming such applicability, a New Jersey court would continue to have jurisdiction to modify the pendente lite order to provide continuing family support.

In the instant case, Mr. Kean and Ms. Kean shared custody of the children. The November 25, 1992, Order denied both Mr. Kean and Ms. Kean's separate applications for pendente lite physical custody of the children, and ordered Mr. Kean and Ms. Kean to

continue existing custodial arrangements, reduce the custodial arrangements to writing, and share equally in the legal authority and responsibility for major decisions concerning the children. There is no evidence in the record that Mr. Kean and Ms. Kean ever reduced the custodial arrangements to writing pursuant to the November 25, 1992, Order. For 2 months in 1992, Ms. Kean and the children lived in a residence apart from Mr. Kean. That Ms. Kean and the children lived apart from Mr. Kean for 2 months does not necessarily mean that Mr. Kean was not a custodial parent. During the time when they lived apart, Judge Ross issued the November 25, 1992, Order, denying both Mr. Kean and Ms. Kean's separate applications for physical custody, thereby confirming that Mr. Kean and Ms. Kean were both custodial parents.

As of December 1992, Ms. Kean and the children resumed living in the marital residence with Mr. Kean. The January 9, 1996, Order, was the first of the orders issued by Judge Ross to determine physical custody as an issue separate from legal custody. In the January 9, 1996, Order, Judge Ross ordered that Mr. Kean and Ms. Kean share physical custody and set out the particular schedule that they should use to share physical custody. There is no indication in the record that Mr. Kean was a noncustodial parent at any time during the divorce proceeding. Because Mr. Kean was a joint custodial parent, N.J. Stat. Ann. sec. 9:2-5 (West 2003), quoted above, would have had no

applicability upon the death of Ms. Kean, and the general rule that divorce proceedings abate with the death of either party would continue to apply.  At this point, the New Jersey court would no longer have jurisdiction to modify the support order.

Mr. Kean would have received sole custody of the children if Ms. Kean had died during the pendency of the divorce proceeding. Consequently, and in contrast to the situation in Gonzales v. Commissioner, supra, even with jurisdiction there would be no logical reason for the New Jersey court to order that Mr. Kean continue to pay support or for the New Jersey court to order any payment as a substitute for the unallocated support that Mr. Kean paid during the pendency of the divorce proceeding.

In summary, based upon the general rule that divorce proceedings terminate with the death of either spouse, and absent unusual circumstances, the New Jersey court would not have had continuing jurisdiction or reason to enforce or modify any support order upon Ms. Kean's death.  Even though the series of orders was both temporary and modifiable during the divorce proceeding, upon Ms. Kean's death, the divorce proceeding would have abated, and Mr. Kean's obligations under the orders would have terminated.

Since the disputed payments would have terminated at Ms. Kean's death, they meet the requirements of section 71(b)(1)(D). Consequently, the disputed payments are alimony for Federal

income tax purposes.  The disputed payments are deductible by Mr. Kean, under section 215, and includable in the gross income of Ms. Kean, under sections 61(a)(8) and 71(a).

Given the unique factual circumstances of the instant case, Miller v. Commissioner, T.C. Memo. 1999-273, affd. sub nom. Lovejoy v. Commissioner, 293 F.3d 1208, 1212 (10th Cir. 2002), decided under Colorado law, and Gilbert v. Commissioner, T.C. Memo. 2003-92, decided under Pennsylvania law which is no longer in effect, do not support a different result.

To reflect the foregoing and the parties' concessions,

Decisions will be entered under Rule 155.