T.C. Summary Opinion 2007-137

UNITED STATES TAX COURT

MICHELE K. GARNER AND ROGER ALLEN GARNER, JR., Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6291-06S.                    Filed August 6, 2007.

Michele K. Garner and Roger Allen Garner, Jr., pro sese.

<u>Sara J. Barkley</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2003.

Respondent determined a deficiency in petitioners' Federal income tax for 2003 of $2,400 on the basis of the disallowance of an alimony deduction for payments made to petitioner husband's ex-wife. The sole question presented in this case is whether those payments met the definition of "alimony" under the Internal Revenue Code. As we are required to hold that the payments at issue were not alimony, we must sustain respondent's determination.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time the petition was filed, Michele K. Garner and Roger Allen Garner, Jr. (Mr. Garner), jointly referred to herein as petitioners, resided in Colorado. They moved there from Georgia in 2004.

Mr. Garner and Lisa B. Garner (ex-wife) were married in Georgia in December 1983. They were divorced there in November 2002. The section of the marital Settlement Agreement labeled "ALIMONY" provides that Mr. Garner will pay his ex-wife "$800 per month as alimony" for 10 years. That section of the Settlement Agreement goes on to use the phrase "lump sum alimony" without further explanation or qualification. The Settlement Agreement

also provides for the division of real and marital property, as well as child support and child custody.

Mr. Garner credibly testified that he did not have legal representation through the completion of the divorce proceedings, and that his ex-wife's attorney assured him that his monthly payments would be tax deductible. Petitioners also credibly testified that, at the last minute, the ex-wife's attorney added the words "lump sum" into the final draft of the Settlement Agreement; although suspicious of the change, petitioners could not, without independent representation, foresee its impact.

Pursuant to the Settlement Agreement, Mr. Garner paid his ex-wife $9,600 in 2003, and petitioners claimed a deduction in that amount on their tax return.[2] Respondent denied the deduction and determined a deficiency of $2,400 on the ground that the payments made in 2003 did not meet the definition of alimony under the Internal Revenue Code.

---

[2] The fact that this amount was paid through an Income Deduction Order (wage garnishment) has no impact on the current proceedings. We note, however, that there appears to be a discrepancy between the number of payments required under the terms of the Settlement Agreement and those being enforced via the wage garnishment.

## Discussion[3]

Section 71(a) provides the general rule that alimony payments are included in the gross income of the payee spouse; section 215(a) provides the complementary general rule that alimony payments are tax deductible by the payor spouse in "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year."

The term "alimony" means any alimony as defined in section 71, the relevant provision of which explains:

> SEC. 71(b).  Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income * * * and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

---

[3]  As the issue for decision is essentially legal in nature, we decide the instant case without regard to the burden of proof.

> (D) there is no liability to make
> any such payment for any period after
> the death of the payee spouse and there
> is no liability to make any payment (in
> cash or property) as a substitute for
> such payments after the death of the
> payee spouse.

Both parties agree that Mr. Garner's payments to his ex-wife satisfied the requirements set out in section 71(b)(1)(A), (B), and (C).  The parties do not agree, however, whether the requirement to make payments would have terminated in the event of the ex-wife's death.  See sec. 71(b)(1)(D).

Although section 71(b)(1)(D) originally required that a divorce or separation instrument affirmatively state that liability for payments terminate upon the death of the payee spouse in order for the payments to be considered alimony, the statute was retroactively amended in 1986 so that such payments now qualify as alimony as long as termination of such liability would occur upon the death of the payee spouse by operation of State law.[4]  Hoover v. Commissioner, 102 F.3d 842, 845-846 (6th Cir. 1996), affg. T.C. Memo. 1995-183.  If the payor is liable for any qualifying payment after the recipient's death, none of the related payments required will be deductible as alimony by the payor.  See Kean v. Commissioner, 407 F.3d 186, 191 (3d Cir.

---

[4]  Other amendments to sec. 71 also removed rules applicable to deducting payments when the period for payments is more than 10 years.  See Deficit Reduction Act of 1984, Pub. L. 98-369 sec. 422(a), 98 Stat. 795.

2005), affg. T.C. Memo. 2003-163.  Here, as the Settlement Agreement itself does not provide any conditions for the termination of Mr. Garner's payments to his ex-wife, we look to Georgia State law to resolve the issue.  Morgan v. Commissioner, 309 U.S. 78, 80-81 (1940); see also, e.g., Kean v. Commissioner, supra; Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987); Berry v. Commissioner, T.C. Memo. 2000-373 (stating "[a]lthough Federal law controls in determining [the taxpayer's] income tax liability * * *, State law is necessarily implicated in the inquiry inasmuch as the nature of [the payor's] liability for the payment" was based in State law), affd. 36 Fed. Appx. 400 (10th Cir. 2002).

Under Georgia law, alimony is defined as an allowance out of one party's estate, made for the support of the other party when living separately.  Ga. Code Ann. sec. 19-6-1(a) (LexisNexis 2004).  It may be either temporary or permanent.  Id.  Permanent alimony is further characterized as either "periodic" alimony or "lump sum" alimony.  Winokur v. Winokur, 365 S.E.2d 94, 95 (Ga. 1988).  Lump sum alimony may be paid in installments.  See id. The difference between the two under Georgia law is that the obligation to pay periodic alimony terminates at the death of either party, yet the obligation to pay lump sum alimony in installments over a period of time does not.  Id.

- 7 -

The Georgia Supreme Court has explained that the obligation to pay lump sum alimony does not terminate upon the death of either party because lump sum alimony is in the nature of a property settlement, regardless of whether it is designated as alimony. Id. The fact that there may be an actual property settlement apart from any payments is irrelevant. See Hopkinson v. Commissioner, T.C. Memo. 1999-154 (stating that the inquiry is not whether the payments were alimony or a property settlement based on the facts and circumstances of the case but only whether the requirements of section 71 are met).

The Georgia Supreme Court has also established the following test to be used in determining whether particular payments are lump sum alimony payable in installments, as opposed to periodic alimony: "If the words of the documents creating the obligation state the exact amount of each payment and the exact number of payments to be made without other limitations, conditions or statements of intent, the obligation is one for lump sum alimony payable in installments." Winokur v. Winokur, supra at 96; see also Hopkinson v. Commissioner, supra.

Unfortunately for petitioners, the combination of the ex-wife's attorney's addition of the words "lump sum" and the fact that the episodic payments are for an exact amount and for a fixed period of time (i.e., $800 per month for 10 years) changed the nature of the payments from periodic alimony to something

entirely different:  Lump sum alimony which is not, despite what petitioners may have been assured, deductible from petitioners' income as alimony.  Thus, we hold that the $9,600 paid to Mr. Garner's ex-wife in 2003 pursuant to the Settlement Agreement does not qualify to be deducted as alimony paid by petitioners under section 215.  Sec. 71(b)(1)(D); see Mukherjee v. Commissioner, T.C. Memo. 2004-98.

Petitioners have asked us to reform the Settlement Agreement to more properly reflect the Federal tax intentions of the parties, particularly given the circumstances under which the Settlement Agreement was entered into.  As a court of limited jurisdiction, we are unable to do so.  See, e.g., Commissioner v. McCoy, 484 U.S. 3, 7 (1987); Hays Corp. v. Commissioner, 40 T.C. 436, 442-443 (1963), affd. 331 F.2d 422 (7th Cir. 1964); see also Woods v. Commissioner, 92 T.C. 776, 784-787 (1989); Hopkinson v. Commissioner, supra.  We do note, however, that the Georgia State courts may have jurisdiction over changes to the Settlement Agreement and would be the proper forum for such disputes.

In sum, we found petitioners to be very straightforward and honest, as well as well prepared for trial.  Unfortunately, the Internal Revenue Code is very specific in its requirements, and Mr. Garner's payments to his ex-wife in 2003 did not meet the requirement outlined in section 71(b)(1)(D) by virtue of Georgia State law.  Accordingly, we must hold that, in the instant case,

Mr. Garner's payments made to his ex-wife in 2003 did not satisfy all of the conditions set forth in section 71 and are thus not properly deductible as alimony for the taxable year in issue.

To reflect our disposition of the disputed issue,

<u>Decision will be entered for respondent.</u>