T.C. Memo. 2013-166

UNITED STATES TAX COURT

JOHN D. NYE AND ROSE M. NYE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2001-11.                    Filed July 15, 2013.

<u>James L. Chase</u>, for petitioners.

<u>John W. Sheffield III</u> and <u>Edwin B. Cleverdon</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before the Court on respondent's motion for

summary judgment as supplemented.[1]  The Court shall grant that motion.

_____

[1]Respondent filed a motion for summary judgment (respondent's motion).
Petitioners filed a response to respondent's motion (petitioners' response), and
(continued...)

[*2]                              <u>Background</u>

The record for purposes of respondent's motion establishes, the parties agree with, and/or the parties do not dispute the following factual background.

Petitioners resided in Florida at the time they filed the petition.

On September 12, 1990, the Circuit Court in and for the County of Santa Rosa, Florida (Santa Rosa Circuit Court), issued a final judgment titled "FINAL JUDGMENT FOR DISSOLUTION OF MARRIAGE" (dissolution judgment) with respect to the petition for dissolution of marriage that John David Nye (Mr. Nye), a petitioner herein, had filed in that court.  In the dissolution judgment, the Santa Rosa Circuit Court ordered and adjudged, inter alia, that the marriage between Mr. Nye and Alice C. Nye was dissolved.  The dissolution judgment also ordered and adjudged "That the parties [Mr. Nye and Alice C. Nye] have freely and voluntarily entered into a Separation and Property Settlement Agreement dated August 23,

---

[1](...continued)
respondent filed a reply to petitioners' response (respondent's reply).  The Court did not find respondent's motion, petitioners' response, and respondent's reply to be helpful in resolving the issue presented in respondent's motion.  As a result, the Court ordered the parties to supplement their respective filings.  Respondent filed a supplement to respondent's motion, and petitioners filed a supplement to petitioners' response.  Unfortunately, the Court did not find those respective supplements to be helpful.

**[*3]** 1990, the original being attached hereto, incorporated herein, and the parties shall comply with its terms."

The "Separation and Property Settlement Agreement dated August 23, 1990" (property settlement agreement) that the Santa Rosa Circuit Court incorporated into its dissolution judgment, the terms of which that court required Mr. Nye and Alice C. Nye to follow, provided in pertinent part:[2]

> 10. <u>ALIMONY</u>:  The Husband shall pay to the Wife as and for permanent alimony the sum of $3,600.00 per month to be paid on the first day of each month beginning with the first day of the first month after the execution of this Agreement and continuing in a like manner until the Wife dies or, remarries or until the Husband dies.  In addition to permanent alimony the Husband shall pay rehabilitative alimony in the amount of $200.00 per month for thirty (30) months beginning with the first day of the first month after execution of this Agreement.  The rehabilitative alimony shall terminate upon the remarriage of the Wife or upon the death of either party.

> 11. <u>LUMP SUM ALIMONY</u>:  As and for lump sum alimony the Husband agrees to assist the Wife in the purchase of a home to be

---

[2]The parties herein are in agreement that Mr. Nye and Alice C. Nye agreed as part of their property settlement agreement that at the earlier of Mr. Nye's death or the death of both of his parents Mr. Nye would transfer to Alice C. Nye title to certain real property titled in his name, subject to any existing mortgage (Mr. Nye's real property).  They also agree that at the time of the divorce judgment Mr. Nye's parents were residing in that real property.  In addition, the parties agree that the estimated value of Mr. Nye's real property was $60,000, although they disagree as to when that property was so valued.  The parties also disagree about whether the mortgage loan to which Mr. Nye's real property was subject at the time it was so valued was $45,000 or $46,000.  Those disagreements are not material to our determination of whether to grant respondent's motion.

[*4] titled in her name should she choose to buy another home within three years of the date of this Agreement. If the Wife elects to purchase a home within three years of the date of this Agreement, the Husband shall provide for her down payment not to exceed $10,000.00. The Wife shall give the Husband no less than 120 days notice of her intent to purchase a home and her demand that he provide the down payment up to $10,000.00.

12. <u>MEDICAL INSURANCE FOR WIFE</u>: As additional support for the Wife, the Husband shall attempt to obtain and shall maintain major medical health insurance for the Wife and provide her with proof of insurance and claims information. If the Wife is uninsurable or if the Husband is otherwise unable to obtain insurance for her he shall pay $150.00 per month directly to the Wife in lieu of providing major medical insurance. This insurance obligation shall continue as long as the Husband is obligated to pay permanent alimony.

Around the end of 2006, Alice C. Nye filed with the Santa Rosa Circuit Court a document titled "SUPPLEMENTAL PETITION FOR MODIFICATION" (petition for modification of dissolution judgment).[3] In that petition, Alice C. Nye requested that court to modify its dissolution judgment by increasing

> the amount of support payable to her by the Former Husband [Mr. Nye] in the form of alimony and in the form of additional funds to purchase medical insurance for herself as provided for in the Final Judgment [dissolution judgment] which adopted and incorporated the parties' Marital Settlement Agreement [property settlement agreement].

---

[3]Mr. Nye also filed a petition with the Santa Rosa Circuit Court. The record does not establish what Mr. Nye sought in that petition.

[*5]  On December 7, 2007, while Alice C. Nye's petition for modification of dissolution judgment was pending in the Santa Rosa Circuit Court (dissolution judgment modification case), she and Mr. Nye signed a document titled "Mediation Settlement Agreement" (mediation agreement).  In that agreement, Alice C. Nye and Mr. Nye agreed to the following settlement of that dissolution judgment modification case pending in the Santa Rosa Circuit Court:

> The undersigned parties hereby agree to fully settle this case as follows:
>
> FH [Mr. Nye] to pay FW [Alice C. Nye] $350,000 before March 6, 2008, (and fully & promptly pay all alimony until FW receives the $350,000) and FW to quit claim 2809 Whisper Pine Dr., Gulf Breeze, to FH.  After payment, no further alimony, insurance & other obligations shall be due from FH to FW.  Each party to pay own attorneys fees and costs.  November & December alimony payments past due shall be paid no later than December 11, 2007.

By letter dated December 12, 2007 (Ms. Anderson's December 12, 2007 letter), Kathleen E. Anderson (Ms. Anderson), the attorney who was representing Alice C. Nye in the dissolution judgment modification case, notified James L. Chase (Mr. Chase), who was representing Mr. Nye in that case,[4] that, inter alia, she would not file with, and for consideration by, the Santa Rosa Circuit Court a proposed final judgment resolving Alice C. Nye's petition for modification of

---

[4]Mr. Chase also is attorney of record for petitioners in the instant case.

[*6] dissolution judgment until Mr. Nye made on or before March 6, 2008, a payment of $350,000 to Alice C. Nye to which he had agreed in the mediation agreement.  Ms. Anderson's December 12, 2007 letter stated:

> We received a telephone call from your office inquiring as to the proposed Final Judgment of Modification.  Pursuant to my previous correspondence to you, I will not file this document until your client has paid mine.  If your client pays mine prior to the "drop dead date" as set forth in the Agreement, then upon receipt of the funds due and owing to my client, I will forward the proposed Final Judgment of Modification to the Court.  I enclose herewith a proposed Final Judgment of Modification for your review and initialing; however, again, I will not forward this document along to the Court until my client has been paid.  Similarly, and as previously stated in my correspondence to you, my client will not execute the Quit Claim Deed of the property to your client until she has received the funds due and owing to her as set forth in the Mediated Settlement Agreement.  I am sure you understand my rationale for this.

On January 28, 2008, Mr. Nye made a payment of $350,000 ($350,000 payment) to Alice C. Nye to which he had agreed in the mediation agreement.  Thereafter, on February 4, 2008, the Santa Rosa Circuit Court issued a final judgment titled "Final Judgment of Modification" (modification judgment) in the dissolution judgment modification case.  In the modification judgment, that court incorporated by reference into that judgment and approved the mediation agreement between Mr. Nye and Alice C. Nye.  The modification judgment ordered and adjudged:  "The parties' Mediation Settlement Agreement entered

[*7] into and executed by the respective parties on December 7, 2007, is hereby adopted by the Court and the parties are ordered to comply with the terms and conditions set forth in the attached Mediation and Settlement Agreement."

Petitioners filed a Federal income tax (tax) return for their taxable year 2008 (2008 return). In that return, they claimed an alimony deduction under section 215(a)[5] for the $350,000 payment that Mr. Nye made to Alice C. Nye on January 28, 2008.

Respondent issued to petitioners a notice of deficiency (notice) with respect to their taxable year 2008. In that notice, respondent disallowed $346,250 of the $350,000 payment that petitioners claimed as an alimony deduction in their 2008 return and allowed $3,750[6] of that payment as an alimony deduction. In the

---

[5]All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[6]The $3,750 of the $350,000 payment that respondent allowed as an alimony deduction in the notice is equal to the sum of the respective amounts for permanent alimony ($3,600) and for medical insurance ($150) that Mr. Nye was required to pay each month under the property settlement agreement that was incorporated into the dissolution judgment. The $3,750 that respondent allowed as an alimony deduction in the notice is not at issue in this case.

**[*8]** notice, respondent also determined that petitioners are liable for their taxable year 2008 for the accuracy-related penalty under section 6662(a).[7]

In the petition, petitioners alleged error solely with respect to respondent's determination that they are not entitled to deduct as alimony for their taxable year 2008 the full amount of Mr. Nye's $350,000 payment to Alice C. Nye.[8] They alleged no error in the petition with respect to respondent's determination to impose on them the accuracy-related penalty under section 6662(a).

## Discussion

The issue presented in respondent's motion is whether petitioners are entitled to deduct as alimony under section 215(a) $346,250 (payment at issue)[9] of the $350,000 payment that Mr. Nye made to Alice C. Nye on January 28, 2008, before the Santa Rosa Circuit Court issued its modification judgment on February 4, 2008, into which that court incorporated the mediation agreement that required Mr. Nye to make that $350,000 payment to Alice C. Nye.

---

[7]Respondent made certain other determinations in the notice, the resolution of the propriety of which depends on our resolution of the issue under sec. 215(a) presented in respondent's motion.

[8]In fact, petitioners alleged in the petition that "[t]he only issue is the deductibility of the $350,000 as alimony."

[9]See supra note 6.

**[*9]** Petitioners do not claim that the Court should deny respondent's motion on the ground that there is any genuine dispute as to any material fact for trial that the Court must first resolve before deciding whether petitioners are entitled to deduct as alimony under section 215(a) the payment at issue. In fact, in petitioners' response petitioners ask the Court not only to deny that motion but also to "grant Summary Judgment in favor of the Petitioners". The Court agrees with the parties that there is no genuine dispute as to any material fact for trial. The Court disagrees with petitioners that it should deny respondent's motion and that they are entitled to summary adjudication in their favor on the issue under section 215(a) presented in that motion.

Section 215(a) allows an individual to deduct "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year." Section 215(b) defines the term "alimony or separate maintenance payment" for purposes of section 215 to mean "any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71."

Section 71(b)(1) provides the following definition of the term "alimony or separate maintenance payment":

**[\*10]** SEC. 71.  ALIMONY AND SEPARATE MAINTENANCE
PAYMENTS.

(b) Alimony or Separate Maintenance Payments Defined.--For purposes of this section--

(1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Section 71(b)(2) provides the following definition of the term "divorce or separation instrument" used in section 71(b)(1)(A) and (B):

**[*11]** SEC. 71.  ALIMONY AND SEPARATE MAINTENANCE
                    PAYMENTS.

       (b) Alimony or Separate Maintenance Payments Defined.--For purposes of this section--

\*      \*      \*      \*      \*      \*      \*

       (2) Divorce or separation instrument.--The term "divorce or separation instrument" means–

       (A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,

       (B) a written separation agreement, or

       (C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

The parties agree that the payment at issue must meet all four requirements in section 71(b)(1)(A) through (D) in order to constitute an alimony or separate maintenance payment that is deductible under section 215(a) and includible in the income of the recipient under section 71(a).[10]  They disagree as to whether that payment satisfies the requirement in section 71(b)(1)(A) and the requirement in section 71(b)(1)(D).

---

[10]Consistent with sec. 71(a), sec. 61(a)(8) defines gross income to mean all income from whatever source derived, including alimony and separate maintenance payments.

**[\*12]**  It is respondent's position that the payment at issue satisfies neither section 71(b)(1)(A) nor section 71(b)(1)(D).  The Court considers only whether the payment at issue satisfies the requirement in section 71(b)(1)(D).  That is because resolution of that question resolves the issue of whether petitioners are entitled to deduct that payment as alimony under section 215(a).

The parties agree that on December 7, 2007, the effective date of the mediation agreement between Mr. Nye and Alice C. Nye, that agreement became binding on Mr. Nye and Alice C. Nye, and Mr. Nye became obligated pursuant thereto to make the $350,000 payment to Alice C. Nye on or before March 6, 2008.

The requirement in section 71(b)(1)(D) is satisfied if the payor has "no liability to make any * * * payment for any period after the death of the payee spouse and * * * no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse."  Whether that requirement is satisfied is determined by the terms of the applicable instrument or, if the instrument is silent on the matter, by State law.  See Kean v. Commissioner, T.C. Memo. 2003-163, aff'd, 407 F.3d 186 (3d Cir. 2005).

The Court turns first to the terms of the mediation agreement.  That agreement is silent as to whether Mr. Nye's obligation in that agreement to make

**[*13]** the $350,000 payment to Alice C. Nye would have terminated if she (or he) had died after December 7, 2007, the effective date of that agreement, and before the Santa Rosa Circuit Court had decided what, if any, action to take with respect to Alice C. Nye's petition for modification of dissolution judgment that was pending in that court.

Because the mediation agreement is silent, the Court turns for guidance to the law of the State of Florida (Florida law). The Court finds Van Boven v. First Nat'l Bank in Palm Beach, 240 So. 2d 329 (Fla. Dist. Ct. App. 1970), to be instructive.[11] Like the instant case, Van Boven involved a divorced couple who had entered into a written agreement (Van Boven separation agreement) that provided, inter alia, for the payment of periodic alimony by the former husband to the former wife and that the local Florida circuit court (Florida circuit court) had approved and incorporated into the final decree divorcing them (Van Boven divorce decree). Id. at 329. As is true in the instant case, in Van Boven the former husband[12] filed in the Florida circuit court a petition for modification of the Van

---

[11]The Court's research did not lead the Court to any opinion of the Florida Supreme Court, the highest court in Florida, that had, like Van Boven v. First Nat'l Bank in Palm Beach, 240 So. 2d 329 (Fla. Dist. Ct. App. 1970), facts essentially the same as the facts involved in the instant case.

[12]In the instant case, both the former husband and the former wife filed a petition.

[*14] Boven divorce decree (Van Boven modification proceeding) in which he sought to modify the amount of the periodic alimony payments that he was obligated under that divorce decree to make to the former wife. Id. As is also true in the instant case, in Van Boven during the pendency of the Van Boven modification proceeding the former husband and the former wife entered into a written agreement (Van Boven settlement agreement) to settle that proceeding. Like the mediation agreement involved in the instant case, the Van Boven settlement agreement involved in the Van Boven case provided that the former husband agreed to pay a lump sum of money[13] to the former wife in exchange for her agreement to discharge him from his obligation under the Van Boven divorce decree to pay periodic alimony to her. Id. at 330.

In contrast to the instant case, however, in Van Boven the former wife died before the former husband had made full payment to her of the lump sum of money[14] that he was required to pay to her under the Van Boven settlement agreement and before the Florida circuit court had decided what, if any, action to take with respect to the Van Boven modification proceeding. Id. After the former

---

[13]The lump sum of money that the former husband agreed in the Van Boven settlement agreement to pay to the former wife was payable in installments. Van Boven, 240 So. 2d at 330.

[14]See supra note 13.

**[*15]** wife died, the executor of her estate was substituted as a party in the Van Boven modification proceeding and filed a separate petition for modification of the Van Boven divorce decree. Van Boven, 240 So. 2d at 330. In that petition for modification, the executor of the former wife's estate asked the Florida circuit court to approve the Van Boven settlement agreement, enter a judgment modifying the Van Boven divorce decree by incorporating that agreement into that decree, and order the former husband to comply with the modified Van Boven divorce decree. Id. After concluding that the Van Boven settlement agreement did not provide for the payment of alimony but instead provided for the payment of a lump sum of money "in lieu of all claims of alimony", the Florida circuit court granted the relief sought in the petition for modification of the Van Boven divorce decree that the former wife's estate had filed in that court after she died. Id. The former husband appealed. Id.

The Florida district court of appeals framed the issue presented to it on appeal in Van Boven as follows: "whether a court of equity may modify the alimony provisions in a final divorce decree *subsequent* to the death of the former wife." Id. The Florida district court of appeals addressed the propriety of the Florida circuit court's determination that the Van Boven settlement agreement provided for the payment of a lump sum of money "in lieu of all claims of

**[\*16]** alimony". <u>Id.</u> at 331. After examining that agreement, which is similar in all material respects to the mediation agreement involved in the instant case, the Florida district court of appeals concluded that the Van Boven settlement "agreement, when viewed in its proper prospective [sic], could not be for anything other than lump sum alimony." <u>Id.</u>

The Florida district court of appeals observed that if the Florida circuit court had approved the Van Boven settlement agreement and had entered a judgment modifying the Van Boven divorce decree by incorporating that agreement into that decree before the former wife had died, the Florida district court of appeals would have had "no difficulty in concluding that the modification of the final decree * * * [by the Florida circuit court] fixed appellant's [former husband's] obligation for the entire lump sum as of the time of the modification, even though * * * [the former wife's] death should occur thereafter". <u>Id.</u> at 332. However, because the former wife had died before the Florida circuit court had modified the Van Boven divorce decree by incorporating the Van Boven settlement agreement into that decree, the Florida district court of appeals held that the Florida circuit court did not have jurisdiction to modify the periodic alimony provisions in the Van Boven divorce decree after the death of the former wife. <u>Id.</u> Nonetheless, the Florida district court of appeals observed several times in <u>Van Boven</u> that under Florida

**[\*17]** law governing contracts (Florida contract law) the executor of the former wife's estate might have rights under the Van Boven settlement agreement.[15] Moreover, in dismissing the petition for modification of the Van Boven divorce decree that the executor of the former wife's estate had filed, the Florida district court of appeals did so "without prejudice to any rights which appellee [executor of the former wife's estate] may have under either of the written contracts [i.e., the Van Boven separation agreement and the Van Boven settlement agreement] between appellant [former husband] and his former wife." Van Boven, 240 So. 2d at 332.

Under Florida contract law, when one of the parties to a contract dies, that party's rights and obligations under the contract generally survive that party's death and become binding on, and enforceable by, the personal representative of that party's estate. See, e.g., Frissell v. Nichols, 114 So. 431, 434 (Fla. 1927); Hiers v. Thomas, 458 So. 2d 322, 323 (Fla. Dist. Ct. App. 1984).

The Court concludes that under Florida contract law Mr. Nye's obligation under the mediation agreement to make the $350,000 payment to Alice C. Nye

---

[15]The Florida district court of appeals stated several times that it was not addressing the issue of the contractual liability of the former husband under the Van Boven settlement agreement. See Van Boven, 240 So. 2d at 330, 331 n.1, 332.

**[\*18]** would not have terminated if she (or he) had died after December 7, 2007, the effective date of that agreement, and before the Santa Rosa Circuit Court had decided what, if any, action to take with respect to Alice C. Nye's petition for modification of dissolution judgment pending in that court. The Court further concludes that the payment at issue does not satisfy the requirement in section 71(b)(1)(D). The Court holds that petitioners are not entitled to deduct the payment at issue as alimony under section 215(a).

The Court has considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.[16]

---

[16]The Court shall address respondent's argument in respondent's motion that petitioners are deemed to have conceded respondent's determination in the notice that they are liable for their taxable year 2008 for the accuracy-related penalty under sec. 6662(a). In support of that argument, respondent relies on Rule 34(b)(4) and caselaw thereunder and points out that petitioners alleged in the petition that "[t]he only issue is the deductibility of the $350,000 payment as alimony." Petitioners counter in petitioners' response that "[m]ere failure of the taxpayer to include in his assignments of error the Commissioner's penalty determinations did not foreclose the taxpayer from contesting them." The authority on which petitioners rely to support that proposition is Birdwell v. Commissioner, 235 F.2d 112 (5th Cir. 1956), rev'g T.C. Memo. 1955-220. Birdwell is materially distinguishable from the instant case, and petitioners' reliance on Birdwell is misplaced. This Court has consistently applied Rule 34(b)(4) and has held that pursuant to that Rule a taxpayer is deemed to have conceded a determination of the Commissioner of Internal Revenue with respect to which the taxpayer has not alleged error in the petition. See, e.g., Funk v.

(continued...)

- 19 -

[*19]  To reflect the foregoing,

An order granting respondent's

motion as supplemented and decision

for respondent will be entered.

---

[16](...continued)
Commissioner, 123 T.C. 213, 217-218 (2004).  The Court concludes that petitioners are deemed to have conceded the accuracy-related penalty under sec. 6662(a) that respondent determined to impose on them.

Assuming arguendo that the Court had not concluded that petitioners are deemed to have conceded respondent's determination to impose the accuracy-related penalty on them, the only argument that petitioners advance in their response to respondent's motion as to why they are not liable for that penalty is that "based on the facts, it is Petitioners' position that the proposed deficiency determination is incorrect and therefore there is no basis for a proposed assessment of a negligence penalty."  The Court has sustained respondent's determination to disallow the payment at issue as an alimony deduction, and petitioners have not suggested that there is any other reason the Court should not sustain the determination under sec. 6662(a).  Assuming arguendo that the Court had not concluded that petitioners are deemed to have conceded respondent's determination to impose the accuracy-related penalty on them, the Court would conclude that petitioners are liable for their taxable year 2008 for that penalty.